### REAL ESTATE TRUST CO. OF PHILA-DELPHIA et al. v. UNITED STATES.
### No. 19554.

District Court, E. D. Pennsylvania.
June 23, 1937.

Richard W. Thorington and James B. Lichtenberger, both of Philadelphia, Pa., for plaintiffs.

Paul R. Russell, of Washington, D. C., and Thomas J. Curtin, Asst. U. S. Atty., and Charles D. McAvoy, U. S. Atty., both of Philadelphia, Pa., for the United States.

WELSH, District Judge.

This case is before us upon the petition of John Gribbel to recover from the United States $20,099.96, alleged to be an overpayment of income tax for the year 1932. The claim is based upon the refusal of the Commissioner of Internal Revenue to allow, as a deduction from income, the taxpayer's investment of $95,194.45 in the stock of the Cherokee Company which he alleges became worthless in that year. John Gribbel is now deceased and the executors of his estate have succeeded as plaintiffs herein.

The facts are set forth extensively in a stipulation entered as a part of the record, and they are adopted as the fact findings of the court. In addition to the stipulation, oral testimony was given before the court sitting without a jury. The issues raised may be determined by consideration of the following circumstances developed from the agreed facts and the testimony of the witnesses:

The taxpayer owned preferred and common stock of the Cherokee Company, which company had been engaged in the lumber business. On July 19, 1924, a petition in bankruptcy was filed against the Cherokee Company, and on September 11 of the same year an adjudication was entered in the United States District Court for the District of Delaware. The secured debts, including mortgage bonds some of which were owned by the taxpayer, amounted to $1,790,382.34, the aggregate assets were officially appraised at $1,377,124.14, and a substantial insolvency thereby established. In 1926 a Bondholders' Protective Committee was formed and the taxpayer deposited his bonds with the committee. Thereafter, the committee incorporated the Tri-County Lumber Company for the purpose of acquiring and liquidating in an orderly manner the assets of the bankrupt estate; and the new company on January 10, 1927, purchased the assets at public sale for $602,500, a sum insufficient to pay even the preferred creditors. In order to provide funds for expenses, to liquidate prior liens, and to acquire timber rights, the Tri-County Lumber Company borrowed $350,000 on mortgages. It did not engage in business, but merely attempted to preserve the assets which it held until liquidation could be accomplished, but before such disposition, foreclosure was had by the mortgagees who held the mortgages created by the Tri-County Lumber Company aggregating $350,000. Foreclosure took place in December, 1932, and the public sale was confirmed in January, 1933. The proceeds were insufficient to pay the mortgage liens and, of course, there were no funds available for stockholders of the Tri-County Company.

The taxpayer filed his income tax return for the year 1932 reporting net income of $95,059.07 upon which he paid a tax of $20,112.56. An audit of the return by the collector indicated an overpayment of $12.60 which was refunded upon assent of the taxpayer to the correctness of the overassessment. Thereafter the taxpayer on February 2, 1935, field a claim for a further refund of the whole amount of the tax paid for 1932 on the ground that his stock holdings in the Cherokee Company had become a loss in 1932 and the amount thereof should be deducted from his taxable income. The deduction would wholly offset any tax liability for that year and claim was made for the tax paid. The Commissioner disallowed the claim, alleging that the stock had become worthless prior to 1926 and that it was therefore not a deductible loss for the year 1932. Although considerable correspondence was had between the collector and the taxpayer, the disallowance was confirmed by the Commissioner of Internal Revenue.

It is first suggested that the refund of $12.60 and the taxpayer's assent to the correctness of such overassessment was a satisfaction of all of the taxpayer's claims and precludes the present demand for refund. This does not appear to be sound. While it is true that the stating of an account and acceptance of the amount agreed upon is a full settlement of the claims between the parties (Stearns Company v. United States, 291 U.S. 54, 54 S.Ct. 325,

78 L.Ed. 647), we do not find any facts in the present case indicating an agreement that the amount refunded was deemed a full settlement and satisfaction of all of the rights and claims of the taxpayer within the meaning of section 321 et seq. of the Revenue Act 1932 (26 U.S.C.A. § 321 et seq. and note). Such agreement would have to be proven, in addition to the payment and acceptance of the refund, in order to preclude the plaintiff from bringing the present suit.

The principal question presented is whether the taxpayer's stockholdings in the Cherokee Company became a loss deductible from income for tax purposes in the year 1932. This involves the further issues as to whether the formation of the Tri-County Lumber Company by the Bondholders' Committee constitutes a reorganization within the meaning of the act and regulations, and whether the ultimate foreclosure of the Tri-County Company's assets establishes the date of the actual loss on the Cherokee Company stock.

Upon review of the testimony and the deposit agreement under which the Bondholders' Committee was formed, we note that the terms of the agreement indicate an intention to combine only the interests of the bondholders, and while it gave broad powers to the committee, its main purpose was to effect an orderly liquidation of the assets for their benefit. The formation of the Tri-County Lumber Company by the committee was in furtherance of that purpose. We note also that the Bondholders' Committee functioned largely under the direction of one man, was informal in its organization, and appears to have kept no minutes which would be evidence of its policy or plan. The liquidating company which it formed also appears to have been loosely organized and rather indefinite as to expressed purpose, for there is no evidence that any minutes of directors' meetings were ever prepared other than the original organization meetings. The only evidence of the plan of the committee, or of the corporation which it formed, is a letter by Mr. Schriver indicating an intention to liquidate the assets for the payment of the mortgages which the company created and to apply the proceeds of liquidation to the bondholders' claims in the order of their priority, and finally to the stockholders. We may presume the intention to include the stockholders from the language of the letter, but it is indefinite as to whether it was intended to include all of the stockholders, those of classes A or B or only the bond and stockholders who were parties to the agreement under which the committee was formed. There is no testimony as to the number of bondholders who owned stock in the Cherokee Company or the amount of stock which they held.

The evidence does not disclose that the acquisition of the assets by the Tri-County Lumber Company was by or on behalf of the Cherokee stockholders, or that there was an actual or contemplated exchange of stock interest in the old company for the new; nor is there any evidence that a majority of voting stockholders of the Cherokee Company became parties to the plan. On the contrary, it is apparent that the real purpose of the committee was to liquidate the assets for the benefit of the bondholders, inasmuch as there was not even a reasonable hope that the stockholders could receive anything from the liquidation. This is shown by the fact that the assets acquired at $602,500 would, upon liquidation, be applied to the satisfaction of expenses, mortgages of $350,000, and bondholders' claims of $1,453,700 before the shareholders would be entitled to receive anything. There was no distribution of stock or securities of the new company for those of the Cherokee Company, nor does it appear that any arrangement was made for such substitution or exchange. These circumstances all confirm the impression that the interests of the Cherokee stockholders were deemed to be without value prior to the tax year in question.

There is no doubt that a taxpayer may deduct his stock loss from reportable income where it appears from the circumstances that the stock became worthless during the taxable year. Forbes v. Commissioner (C.C.A.) 62 F.(2d) 571. The burden of proof to show with reasonable certainty that the stock became actually worthless in the year in which the loss is claimed is upon the taxpayer [Royal Packing Company v. Commissioner (C.C.A.) 22 F.(2d) 536], and in determining the fact of such loss we are required to apply a practical as distinguished from strictly legal test [Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010]. The act and regulations contemplate the deduction from gross income of losses which may be fixed by

identifiable events. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120. A sale or attempted sale is not necessary, but circumstances which clearly indicate that there was no actual or prospective value might be sufficient to satisfy the court as to the fact of the loss.

■ The bankruptcy, the sale of the assets at a sum insufficient to pay preferred claims, the acquisition of those assets by the committee at less than half the amount of the bond claims, followed by the creation of a mortgage of $350,000, are sufficient identifiable events and circumstances to warrant the finding that the stock in the Cherokee Company was actually worthless prior to the year 1932.

■ The proofs submitted also fail to show a continuity of interest on the part of the old stockholders in the new business. There must not only be a sale of assets to the new company, but it must be clearly shown that the plan intended the stockholders of the old company would be participants in the benefits of the new enterprise. Mead Coal Company v. Commissioner (C.C.A.) 72 F.(2d) 22. The facts here presented do not show such a continuity of interest on the part of the old stockholders in the new company sufficient to establish a reorganization within the meaning of section 112, (b)(3) of the Revenue Act of 1932 (26 U.S.C.A. § 112(b)(3) and note), which provides that no gain or loss shall be recognized in the case of reorganization. We therefore believe that the common stockholders of the Cherokee Company did not survive the bankruptcy and become participants in any reorganization within the meaning of the act and that their interests were wholly worthless prior to the foreclosure of the assets of the Tri-County Lumber Company in the latter part of 1932.

The parties have submitted requests for findings of fact and conclusions of law which for the reasons herein discussed are disposed of in the following manner: Of the plaintiff's requests the following are affirmed: Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 24, 27, 28, and 29. The remaining requests for findings of fact are refused. The plaintiffs' requests for conclusions of law Nos. 1, 3, 8, and 10 are affirmed, and the remaining requests for conclusions of law are declined.

The defendant's requests for findings of fact Nos. 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 14, and 15 are affirmed, and No. 7 is declined. Defendant's requests for conclusions of law Nos. 1, 2, 3, and 4 are affirmed, and judgment may be entered for the defendant.