**DONEGHY et al. v. ALEXANDER, Formerly Collector of Internal Revenue.**

**SAME v. JONES, Collector of Internal Revenue.**

**Nos. 2157 and 2158.**

Circuit Court of Appeals, Tenth Circuit.

March 6, 1941.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

These cases involve the income tax liability of J. C. Doneghy for the year 1930. Doneghy Investment Company was a corporation organized in 1904 for the purpose of dealing in lands and interests in lands in the Indian Territory. Its authorized capital stock was $100,000 divided into 4000 shares of the par value of $25.00 each. Doneghy paid $51,000 in cash and acquired 2040 shares. Others paid $29,000 and acquired 1160 shares. Doneghy thus owned 51/80 or 63¾ per cent of the stock issued; the others owned 29/80 or 36¼ per cent; and no further or additional stock was ever issued. Doneghy became president and manager of the corporation. The board of directors adopted resolutions vesting in him full authority to act in behalf of the corporation in respect to the acquisition, management and disposition of lands, and providing that he should not receive any salary for his services but should receive his actual expense and one-half of the net profits of all transactions. The Constitution of Oklahoma,[1] adopted in 1907, with an exception not material here, prohibited corporations from holding title to farm lands within the state; and by act of the legislature[2] it was provided that corporations owning such lands should make disposition of them within a period of seven years from May 26, 1908. For the purpose of complying with the provisions of the statute, the stockholders of the corporation entered into a trust agreement in April, 1915, providing that the corporation should convey all of its lands to Doneghy, as trustee; that he should sell them as soon as it could be done; and that he should first deduct all expenses incurred, next deduct for his services one-half of the net profits, and then distribute the remainder to the beneficial owners named in a stated proportion, which was identical with their ownership of stock in the corporation. The stockholders and directors of the corporation took appropriate action; the lands were conveyed to Doneghy, as trustee; and the J. C. Doneghy Trust was thus created for the purposes and the beneficiaries stated. In March, 1918, the beneficiaries of the trust entered into a supplemental trust agreement in which it was provided that Doneghy, as trustee, should

Chas. H. Garnett, of Oklahoma City, Okl. (W. K. Garnett, of Oklahoma City, Okl., on the brief), for appellants.

Fred E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Paul S. McMahon, Sp. Assts. to Atty. Gen., and Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellees.

---

[1] Art. 22, § 2, Okl.St.Ann.

[2] 18 Okl.St.Ann. § 82.

first deduct his expenses from the proceeds of sales of lands and leases, should next pay to the parties the sum of $80,000, apportioned according to their previous interest in the corporation, being the amount originally invested in the stock of the corporation, and should then distribute the balance among the beneficiaries on the basis of 81⅞ per cent to Doneghy and the remaining 18⅛ per cent among the others in stated amounts which equalled one-half of their respective percentages of ownership of stock in the corporation. Doneghy managed the lands of the corporation until its liquidation, and he managed the lands of the trust estate from its formation in 1915 through the calendar year 1930. In 1930, he sold to his nephew for $62,500 an undivided one-fourth interest in the trust which was approximately 30.53 per cent of his 81⅞ per cent beneficial interest in it. He regularly filed personal income tax returns for all years subsequent to 1913, but he did not include or report any capital gain or income either from the distribution of the corporate assets in 1915, or the acquisition of the additional interest in the trust in 1918. In the return for 1930, he claimed a loss of $31,850.96 in the sale of the portion of the trust interest to his nephew. The loss was determined by taking $94,350.66 as the cost basis for the interest sold. The tax was paid in 1931. Doneghy subsequently asserted that the loss was in fact $47,574.92, and that by reason of the mistake there had been an overpayment of tax in the sum of $1,965.53. After investigation, audit and report, the Commissioner determined that the taxpayer had not sustained any loss on the sale but instead had realized a gain. That determination was based upon a reduction in the cost basis for the beneficial interest acquired upon the formation of the trust in 1915, and disallowance of any cost for the increased interest acquired in 1918. A deficiency assessment followed, and it was paid in 1934. Separate claims for refund of the alleged overpayment and the asserted deficiency were seasonably submitted and rejected.

The first of these suits was to recover the overpayment and the other was to recover the deficiency. The cases were consolidated for trial. The taxpayer died during the pendency of the actions, and the residuary trustees under a certain provision of his will later became plaintiffs. The court resolved all issues in favor of plaintiffs, except that no cost was allowed for the acquisition of the additional interest in the trust. It was found that such additional interest was acquired without any invested capital, without consideration, and in the nature of a gift or donation from the other beneficiaries. Judgment was rendered for defendant in the first case, and for plaintiffs in the second. Plaintiffs appealed, complaining that the judgment in the first case should have been in their favor, and that the amount awarded in the other case was too small. The question presented is whether the taxpayer's basis for determining gain or loss upon the sale to his nephew in 1930 was increased by reason of the acquisition of the additional interest in the trust in 1918.

Plaintiffs challenge the finding of the court that the taxpayer's acquisition in 1918 of the additional interest in the trust estate was in the nature of a gift or donation by the other beneficiaries. It is urged that the finding is without support in the evidence, and is contrary to the primary facts found. Defendants concede that the finding is not supported by the evidence and cannot be sustained. A careful examination of the record leads to that conclusion. The finding may therefore be laid aside.

■ The major contention of plaintiffs is that from the formation of the trust in 1915 to the execution of the agreement in 1918, the taxpayer owned 63¾ per cent of $80,000 of the assets and 50 per cent of the balance; that the 50 per cent represented compensation for services rendered the trust; that the agreement entered into in 1918 merely changed the form of the interest which belonged to him as compensation for services from that of a half interest in the assets in excess of $80,000 to a greater percentage of beneficial interest in the entire trust estate; that his actual share or interest in the trust was neither increased nor diminished but was merely changed in form from a half interest in part of the assets to an increased percentage in all of them; and that therefore the transaction was one in which there was neither taxable gain nor loss. But the whole contention rests upon the assumption that the 18⅛ per cent interest was acquired with undistributed profits then due the taxpayer for services rendered, and there is a complete absence of proof in the record to support or sustain the assumption. There is nothing whatever to show that any accumulated or undistributed profits were due

him at that time as compensation for services, or that the increased interest was given in settlement for services rendered. For aught the record discloses, he may have previously withdrawn and received annually or at other periods his full share of the profits and applied them to payment for his services. So far as the record speaks, he may have paid cash out of pocket for the increased interest, he may have exchanged property for it, or he may have acquired it in some other manner. The record does not tell even sketchily how it was acquired. Assuming without deciding that, if he had acquired the interest in exchange for undistributed profit; due him as compensation for services rendered, the transaction would have been one involving. neither taxable gain nor loss, plaintiffs wholly failed to carry the burden resting upon them to show that such an exchange was effected.

■ For another reason plaintiffs cannot prevail. Let it be assumed that the increased interest in the trust estate was acquired in settlement of undistributed profits which belonged to the taxpayer as compensation for the services rendered. Section 213 of the Revenue Act of 1918, 40 Stat. 1057, 1065, provided that gross income should include gains, profits, and income derived from salaries, wages, or compensation for personal services of whatever kind and in whatever form paid, and that the amount of all such items should be included as gross income for the taxable year in which they were received. And article 33, Regulations 45, promulgated under the act, provided that where services were paid for with something other than money, the fair market value of the thing taken in payment was the amount to be included as income. The court found the fair market value of the 18⅛ per cent of the beneficial interest in the trust as of 1918 was $96,836.98. Treating the income as acquired in the manner indicated, it was the duty of the taxpayer in making his return on a cash basis to include that amount as income for 1918, even though some or all of the services were rendered in previous years. Sutton·v. Commissioner of Internal Revenue, 10 Cir., 95 F.2d 845; Olson v. Commissioner of Internal Revenue, 7 Cir., 67 F.2d 726, certiorari denied, 292 U.S. 637, 54 S.Ct. 716, 78 L.Ed. 1489. But he did not return any amount as such income in any year. His returns were consistently silent in respect of the matter,

and limitation has long since. run against correction of taxes arising out of the omission. Plaintiffs may not now take profitable advantage of such failure on the part of the taxpayer by asserting an increase in cost basis. R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; Commissioner of Internal Revenue v. Farren, 10 Cir., 82 F.2d 141; Alamo National Bank of San Antonio v. Commissioner of Internal Revenue, 5 Cir., 95 F.2d 622, certiorari denied, 304 U.S. 577, 58 S.Ct. 1047, 82 L.Ed. 1541.

The judgments are severally affirmed.