**COMMISSIONER OF INTERNAL REVENUE v. DALLAS TITLE & GUARANTY CO.**

**DALLAS TITLE & GUARANTY CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9552.

Circuit Court of Appeals, Fifth Circuit.

March 22, 1941.

On Rehearing May 2, 1941.

Warren F. Wattles, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for Commissioner of Internal Revenue.

James P. Swift, of Dallas, Tex., for Dallas Title & Guaranty Co.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

These two appeals involve federal income taxes for the calendar year 1934. They are here by petition for review filed by the Commissioner, and by cross-petition filed by the taxpayer. They were consolidated by order of this court.

The taxpayer is an insurance company, other than a life or mutual company, and is taxable under Section 204 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 732. Its principal business is that of title insurance; its principal place of business is at Dallas, Texas. In 1934 it transferred $40,000 from its premium reserve account to its undivided profits account. $35,674.69 of this amount was received in the years 1913 to 1921, inclusive, when the federal revenue law permitted deductions by insurance com-

panies for net additions to reserve funds required by law. The balance ($4,325.31) was received in the years 1922 to 1929, inclusive, when the federal law did not permit such deductions but permitted deductions for unearned premiums, return premiums, and premiums paid for reinsurance.

The question is whether all of the $40,000, so transferred, should be treated as income of the taxpayer in the year of the transfer (as the Commissioner contends) or only $35,674.69 (as held by the Board of Tax Appeals) or none (as the taxpayer contends). The Board held that the said $35,674.69 was released from the special purposes for which it was held, and became free assets of the company in 1934, when transferred as aforesaid, but that the remainder was income during the years in which it was received, and that petitioner was not estopped to assert it.

█ Prior to 1930, the taxpayer set aside a reserve for unearned premiums on policies written by it in accordance with the requirements of the laws of Texas, presumably as construed by the taxpayer and the insurance department of that state. From 1906 to December 31, 1929, there was set aside $149,829.88, and in each year there was claimed as a deduction in its tax return the net addition to the unearned-premium reserve fund. In 1930, after the passage of a new law on the subject, effective February 27, 1929, Vernon's Ann.Civ.St.Tex. art. 1302a, the state insurance department held that such reserve account need not exceed $100,000, and the taxpayer in 1931 reduced its reserve in the sum of $9,829.88 (i. e. to $140,000), and included the same in its return as taxable income for that year. In 1934 the amount of the above-stated reduction of $40,000 was reported as non-taxable surplus in its return for that year.

In its returns filed from 1913 to 1929, inclusive, the taxpayer represented that the deductions which it claimed were for its unearned-premium reserve account. The Commissioner allowed the deductions thus claimed, and the taxpayer now asserts that its premium reserve account was built up under a mistaken view of the law and that no such account was required prior to the special act of 1929 by the Legislature of Texas. We are not at all convinced that this is true. The question of statutory construction is a doubtful one, and we have no Texas decision on the subject. Whether or not the amounts claimed as deductions were for earned or unearned premiums was a question of fact. The taxpayer gained a substantial advantage for said taxable years 1913 to 1929 by representing that it had unearned premiums on hand and by taking a deduction therefor, and it should not now be allowed to take advantage of the fact that the Commissioner acted upon its misrepresentation of the facts, since it is now too late for the Commissioner to redetermine the taxpayer's income for those years, as the statute of limitation completely bars such action.

Prior to the federal revenue act of 1921, every insurance company was permitted to deduct from its gross income "the net addition, if any, required by law" to be made within the year to its reserve fund.[1] This deduction was not allowable for subsequent years, but, beginning January 1, 1922, it was provided in effect that unearned premiums on outstanding business might be deducted from gross income of any insurance company other than life or mutual.[2]

█ It appears that the petitioner, in its tax returns for 1913 to 1929, inclusive, took credit for the entire $40,000 on the ground that it was made up of unearned premiums. From 1913 to 1921, these deductions were properly allowed as net additions required by law to be made to its reserve fund. From 1922 to 1929, they were properly allowed as unearned premiums on outstanding business. It is argued that premiums paid a title insurance company are earned when paid, and that reserves set up to meet future liabilities on title insurance policies are not deductible from gross income. This may be true ordinarily, but it is not impossible for premiums paid a title insurance company to be unearned, and, in this instance, there is not only no proof that such premiums were not unearned, but the taxpayer represented that the deductions taken were for unearned premiums.[3] This was a

---

[1] Sec. 38 of Chapter 6, Laws of 1909, 36 Stat. 112, 113; Sec. II G(a) (b) of Chapter 16, Laws of 1913, 38 Stat. 172, 173; Sec. 12(a) of Chapter 463, Revenue Act of 1916, 39 Stat. 767, 768; Sec. 234 (a) (10) of Chapter 18, Revenue Act of 1919, 40 Stat. 1077, 1079; Sec. 234(a) (10) of the Revenue Act of 1921, 42 Stat. 254, 256.

[2] Sections 246, 247, Revenue Act of 1921, 42 Stat. 262, 263.

[3] The taxpayer did other business than title insurance business, but did not segregate on its books the funds derived therefrom (R. 63-64).

representation of fact made by petitioner and acted upon by the Commissioner to the advantage of the former and the prejudice of the latter. The taxpayer is now estopped, both legally and equitably, to claim that said premiums were earned during the years 1913 to 1929, inclusive.

There are cases where taxpayers have erroneously taken and been allowed deductions for taxes or duties which they did not owe. Such deductions may be claimed and allowed under a mistake of law, but, when the disbursed money is repaid, the taxpayer owes income tax upon it.[4] The release of a reserve built up from deductions from income has the same effect for federal taxation purposes as any other receipt of income. See Charleston & W. C. Ry. Co. v. Burnet, 60 App.D.C. 192, 50 F.2d 342, 343, where the taxpayer transferred previously untaxed earnings from a reserve to its profit-and-loss account. The amounts so transferred were taxed. The court said that "the effect of the bookkeeping was to make available for general uses the particular moneys impressed in 1921 with the particular obligation and consequent right to deduction."[5]

More nearly analogous is the case where the taxpayer has claimed a deduction for a bad debt which he collects in a subsequent year. Is he not legally estopped to claim that the debt was good in the year in which he took a deduction therefor?

■ Presumably, this taxpayer made its returns from 1913 to 1929 upon an accrual basis. If so, unearned premium returns were properly deducted without regard to any special statute on the subject, because, if the premiums were unearned, they had not accrued. Much depends upon the method of accounting employed by the taxpayer. Section 41 of the act of 1934, 48 Stat. 694, 26 U.S.C.A. Int.Rev.Acts page 679, provides that the net income shall be computed in accordance with the method of accounting regularly employed by the taxpayer in keeping its books. See also section 43 of said act, which provides that the deductions and credits provided for shall be taken for the taxable year in which "paid or accrued" or "paid or incurred",

dependent upon the method of accounting upon the basis of which the net income is computed, unless, in order clearly to reflect the income, the deductions or credits should be taken as of a different period.

In 1931 the taxpayer, by book entry, transferred the sum of $9,829.88 from its premium reserve account to its undivided profits account, and presumably paid taxes thereon. No contention to the contrary is made. The item of $40,000 here involved came from the same unearned premium account, and is liable for income taxes upon the same method of computing income. In R. H. Stearns Co. v. United States, 291 U.S. 54, page 61, 54 S.Ct. 325, at page 328, 78 L.Ed. 647, the court held that the doctrine of estoppel was not overridden by Section 609 of the Revenue Act of 1928, 26 U.S. C.A. Int.Rev.Acts, page 460. Later, on the same page, the court said: "Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." See also Carr v. Commissioner, 5 Cir., 28 F.2d 551; Putnam National Bank v. Commissioner, 5 Cir., 50 F.2d 158; Commissioner v. Liberty Bank & Trust Co., 6 Cir., 59 F.2d 320, 324, 325; Utah Home Fire Ins. Co. v. Commissioner, 10 Cir., 64 F.2d 763, certiorari denied, 290 U.S. 679, 54 S.Ct. 103, 78 L.Ed. 586; Askin & Marine Co. v. Commissioner, 2 Cir., 66 F.2d 776, 778; Nash v. Commissioner, 7 Cir., 88 F.2d 477, certiorari denied, 301 U.S. 700, 57 S.Ct. 930, 81 L.Ed. 1355; Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622, certiorari denied, 304 U.S. 577, 58 S.Ct. 1047, 82 L.Ed. 1541, rehearing denied, 304 U.S. 590, 58 S.Ct. 1055, 82 L. Ed. 1550; Universal, Inc. v. Commissioner, 7 Cir., 109 F.2d 616; Helvering v. Jane Holding Corporation, 8 Cir., 109 F.2d 933.

The decision of the Board is reversed on direct appeal and affirmed on cross-appeal. A recomputation of the tax is directed accordingly.

---

[4] Houbigant, Inc. v. Commissioner, 31 B.T.A. 954, affirmed per curiam, 2 Cir., 80 F.2d 1012, certiorari denied 298 U. S. 669, 56 S.Ct. 834, 80 L.Ed. 1392; Nash v. Commissioner, 7 Cir., 88 F.2d 477, certiorari denied, 301 U.S. 700, 57 S.Ct. 930, 81 L.Ed. 1355.

[5] Cf. Wichita State Bank & T. Co. v. Commissioner, 5 Cir., 69 F.2d 595, and Marine Transport Co. v. Commissioner, 5 Cir., 77 F.2d 177, where apparently the particular deductions were properly taken. In both cases the subsequent recoveries or refunds were held to be taxable income.

## On Petition for Rehearing.

In its petition for a rehearing, the Dallas Title & Guaranty Company asserts that the opinion of the court in this case on the question of estoppel is not only in direct conflict with the stipulation of the parties but is wholly unsupported by any evidence in the record. We shall examine both assertions.

There is a plea of estoppel, but the stipulation is silent upon the misrepresentation of fact which we held sufficient to support this plea. There is no stipulation that such misrepresentation was either made or not made, but it is stipulated "that both petitioner and respondent shall have the right to introduce such further and additional pertinent evidence herein not inconsistent with the foregoing."

We, therefore, may look to the other evidence in the record to ascertain why the Commissioner allowed these deductions during the years 1922 to 1929, inclusive. No reason is put forward except that they were allowed on the ground that the premium reserve account was made up of unearned premiums, but we do not rest our opinion solely on presumption or a process of reasoning. The reserve was reported by respondent on its tax return for 1934 as Reserve Unearned Premium (page 66 of record). During the years 1930 to 1935, inclusive, no further credits were made to this account. When the stipulation is read in connection with the balance sheet (page 66 of record), it is clear that the premium reserve account referred to in the stipulation is the same as the reserve unearned premium account referred to in the balance sheet, which was attached to the return for 1934 and presumably to the returns for prior years.

The best evidence as to the deductions claimed by the taxpayer with reference to its premium reserve account is probably contained in the income tax returns for the years 1922 to 1929, inclusive; but the contents of these returns are not fully shown by the record before us either in the evidence or the stipulation. It may be that our inferences from the incomplete record before us as to the representations made by the taxpayer would be overcome by the returns themselves. Therefore, we shall neither enter nor direct a judgment on cross-appeal, but shall send that part of the case back to the Board of Tax Appeals with directions to hear such further evidence upon the plea of estoppel as either party desires to introduce. With this modification of our former judgment, the petition for rehearing is overruled.