**JOPLIN BROTHERS MOBILE HOMES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 79–3004–CV–S–4.**

United States District Court, W. D. Missouri, S. D.

Oct. 30, 1981.

---

Mathew W. Placzek, Strong & Placzek, P.C., Fred L. Hall, Springfield, Mo., for plaintiff.

Barry Lieberman, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

RUSSELL G. CLARK, Chief Judge.

Plaintiff commenced this action on January 8, 1979 seeking to recover $27,529.61 of alleged excess income tax collected by defendant for the year 1972. On July 27, 1981 the case was tried to the Court. For the following reasons final judgment will be entered for plaintiff and against defendant in the amount of $25,496.31 plus assessed penalties and statutory interest.

In accordance with Rule 52(a), Fed.R. Civ.P., the Court sets forth the following findings of fact and conclusions of law. Plaintiff is a Missouri corporation with its principal place of business in West Plains, Missouri. Clyde and Linden Joplin with their wives Hazel and Marveen Joplin own all of plaintiff's stock. Federal jurisdiction rests upon 28 U.S.C. § 1346(a)(1). In 1967 Clyde and Linden Joplin operated a partnership entitled "Joplin Brothers Mobile Homes" (JB partnership). Until May of 1970 the JB partnership sold mobile homes in and around West Plains, Missouri. In conjunction with each sale the First National Bank of West Plains, Missouri deposited a "courtesy payment" in a special "Joplin Brothers Mobile Homes First National Bank Reserve Account" for each loan made by the bank to finance a mobile home sold by the partnership. The amount of each "courtesy payment" always equaled 1% times the number of years financed times the total financed amount. No restrictions were placed on the right of the partnership or, subsequently, of the corporation to withdraw funds from the account. The bank did not require a minimum balance at any time, nor was the partnership or corporation obligated to reimburse the bank for losses resulting from repossessions. This arrangement lasted from April 21, 1967 through and after December 31, 1971. During that time the bank recorded total deposits of $56,535.03 into the "Reserve Account." Due either to default in loans or early payments by customers, however, the bank charged back against the account sums of $989.50, $819.44, $464.38, and $1,144.39 during the years 1968, 1969, 1970 and 1971 respectively. None of the amounts credited to the JB partnership during the years 1967 through 1970 were reported by Clyde or Linden Joplin as income during those years.

In October, 1969 defendant, by and through revenue agent Ronald L. Garling, audited the personal income tax returns of Clyde and Hazel Joplin, Linden and Marveen Joplin, and of the partnership Joplin Brothers Mobile Homes for the years 1967 and 1968. Although Clyde and Linden Joplin were present to answer any questions, Ken Joplin handled the audit on their behalf and on behalf of the partnership. The

audit lasted from two and a half to three days and was comprehensive. Although at trial revenue agent Garling could not recall any details of the audit, he admitted that an audit lasting two and a half to three days would be considered "comprehensive" and that all relevant financial books and records would have been produced for his inspection. He also admitted that the deposit receipts from the First National Bank of West Plains reserve account [Plaintiff's Exhibit No. 32(a)] normally would have been produced pursuant to a comprehensive audit. Ken Joplin testified that he did produce the reserve account deposit receipts for inspection by revenue agent Garling, and that he revealed the existence of the reserve account orally as well. Ken Joplin further testified that, at the time of the 1969 audit, he explained to revenue agent Garling how the reserve account worked and indicated that the partnership intended to claim the fruits of the account as income in the years during which the various mobile home contracts matured. Following this audit defendant made no determination that relevant law required income from the reserve account to be claimed as income when deposited. The JB partnership ceased doing business on or about May 5, 1970 when plaintiff, Joplin Brothers Mobile Homes, Inc. (JB Corp.), commenced business. JB Corp.'s business was essentially the same as the JB partnership. The name of the bank account at the First National Bank of West Plains remained the same, as did its manner of operation. During the years 1970 and 1971 JB Corp. did not report as income any of the amounts credited to its reserve account.

On or about March 9, 1973 JB Corp. filed its 1972 U.S. Corporation Income Tax Return (Form 1120). In its return plaintiff reported gross receipts of $718,335.51, cost of goods sold of $548,606.48, a gross profit of $169,729.03, and taxable income of $59,-393.74. Plaintiff included $53,117.32 of net credits to the "Joplin Brothers Mobile Homes First National Bank Reserve Account" that had accumulated between 1967 and 1971 in the gross receipts figure for the year 1972 at the suggestion of its accountant, Charles Wahlquist. Plaintiff, however, did not specify on its 1972 tax return the source of the $53,117.32 in additional income included within the gross receipts figure of $718,335.51.

On March 13, 1974, plaintiff filed an Amended United States Corporation Income Tax Return (Form 1120X) for the year 1972 with the Kansas City Service Center claiming a decrease in tax liability of $17,784. Therein plaintiff alleged an overstatement of sales and accounts receivable on the original return totaling $42,306 and an overstatement of the Missouri income tax deduction totaling $2,115. On July 16, 1975 Clyde Joplin and Linden Joplin, on behalf of JB Corp., signed a Waiver of Statutory Notification of Claim Disallowance with respect to the Amended Return filed on March 13, 1974. Plaintiff did not file a refund action within two years from the date of this waiver.

On September 17, 1975, following an audit of plaintiff's 1972 and 1973 income tax returns, the Internal Revenue Service assessed $11,005.26 of additional taxes against JB Corp. for the year 1972 along with a negligence penalty of $550.26 and interest through the date of assessment of $1,671.37. Plaintiff paid this amount on or about September 27, 1975. On or about January 9, 1976, plaintiff filed a Claim for Refund for the year 1972, claiming $27,529.61 as due. In an attachment to its claim plaintiff alleged that the amount of "courtesy payments" included as income for the year 1972 was not income to JB Corp. in 1972 but was income to the JB partnership in years 1967, 1968, 1969 and 1970, and to JB Corp. in 1970 and 1971. Defendant disallowed plaintiff's claim for refund on July 14, 1978 and this suit was timely filed thereafter.

■ Both parties admit that the courtesy payments made by the First National Bank of West Plains, Missouri during the years 1967 through 1971 were taxable as income in the years received. Defendant, however, argues that a "duty of consistency" now estops plaintiff from claiming that the courtesy payments reported as income in

1972 were not properly includable as income in that year. As explained by the Eighth Circuit in *Beltzer v. United States*, 495 F.2d 211, 212 (8th Cir. 1974), the duty of consistency applies when a taxpayer has reported an item for tax purposes in one year; the Commissioner has relied on or acquiesced in that fact for that year; and the taxpayer subsequently attempts to change the representation after the statute of limitations on assessments bars adjustments for the prior tax year. The doctrine ultimately rests on the general principle that "no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong." *R. H. Stearns v. United States*, 291 U.S. 54, 61–62, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934). Nevertheless, one of the essentials of such estoppel is misrepresentation of fact on which the Commissioner relies. "If the mistake is one of law only, and the Commissioner fails to establish that he was misinformed as to the facts, there can be no estoppel." *Helvering v. Williams*, 97 F.2d 810, 812 (8th Cir. 1938). On the evidence and testimony presented at trial, the Court finds that defendant learned of the courtesy payments during its 1969 audit but failed to make any adjustments due to a mutual mistake of law.

■ The Court bases its finding primarily upon the testimony of Ken Joplin and revenue agent Garling. Joplin testified that the partnership, and later the corporation, intended to declare the courtesy payments as income during the years in which the individual loan contracts matured. Joplin also testified, however, that he revealed the existence of the courtesy payments, and explained the partnership's intentions regarding the treatment of those payments as income for tax purposes, to agent Garling in 1969. Garling did not controvert Joplin's testimony, but merely indicated his *present* knowledge that such payments should have been treated as taxable income in the years received. Plaintiff's Exhibit 44 reveals that defendant denied plaintiff's initial request for refund "because ... on a prior audit it was determined that finance income, that you had included in income for 1972, had been included in the proper year." Such evidence supports plaintiff's contention that its failure to declare the courtesy payments as taxable income in the years 1967 through 1971 resulted from a mutual mistake of law. Since the Commissioner has failed to establish that he was misinformed as to the facts, there can be no estoppel.

Defendant has admitted in its Stipulation of Fact that if the doctrine of Quasi-Estoppel is not applied, $53,117.32 must be excluded as income from plaintiff's 1972 corporate income tax return resulting in a refund to plaintiff of $25,496.31 plus statutory interest. The Court finds that, in addition to this amount, defendant must refund the $550.26 negligence penalty paid by plaintiff following defendant's audit of its 1972 tax return plus statutory interest on that sum. Plaintiff, therefore, is entitled to (1) a total refund of $25,496.31 of excess taxes paid; (2) $550.26 of negligence penalty; and (3) interest on both amounts through the date of this judgment in accordance with 26 U.S.C. § 6621(b).[1] Interest accrues on items (1) and (2) from the date of this judgment at a rate of 12% per annum. In making this determination the Court expresses no opinion concerning the applicability of the mitigation provisions contained in 26 U.S.C. §§ 1311–1315.

■ On August 3, 1981 plaintiff filed two motions requesting the Court to compel defendant to pay the witness fees of James Baker and Charles Wahlquist. Plaintiff argues that such action is justified by defendant's unreasonable failure to cooperate with plaintiff at the pretrial stage of these proceedings. In its response filed on August

---

1. 26 U.S.C. § 6611(a) originally provided for interest on overpayments of income tax at a rate of 6% per annum. Effective July 1, 1975, however, 26 U.S.C. § 6621(b) authorized the Secretary to make periodic rate adjustments. Accordingly, from July 1, 1975 until January 31, 1976 the effective interest rate stood at 9% per annum. From February 1, 1976 until January 31, 1977 that rate dropped to 7% per annum. From February 1, 1978 until January 31, 1980 the interest rate dropped further to 6% per annum. On February 1, 1980 until the present time the interest rate doubled to 12% per annum.

10, 1981, defendant claims that it subpoenaed witness Wahlquist simply as a fact witness and not as an expert. Considering the full scope of his trial testimony, the Court refuses to consider Mr. Wahlquist as an expert witness for defendant and will deny plaintiff's motion for expert witness fees. Nevertheless, the Court finds defendant's blind objection to the authenticity of plaintiff's Exhibit No. 32 to be unreasonable. At the pretrial conference held on April 16, 1981 the Court warned both parties that costs incurred in responding to unnecessary objections would be taxed against the objecting party. Reasonable pretrial communication should have resolved the questions that defendant now relies upon to justify its objection. Accordingly, plaintiff's motion to compel payment by defendant of $57.00 in witness fees will be granted.

For the reasons outlined above, it is hereby

ORDERED that the Clerk enter final judgment in favor of plaintiff and against defendant in the following amounts: (1) tax refund of $25,496.31; (2) penalty refund of $550.26; (3) interest on both amounts through the date of this order in accordance with 26 U.S.C. § 6621(b). From the date of this order, interest will accrue at a rate of 12% per annum; and it is further

ORDERED that plaintiff's motion to compel payment to plaintiff by defendant of $57.00 in witness fees for James Baker is granted; and it is further

ORDERED that plaintiff's motion to compel payment by defendant of expert witness fees is denied.