SUTTON, Circuit Judge,
dissenting.
On behalf of her infant daughter, Regina Watkins sued the hospital and doctors who cared for Watkins during her pregnancy, claiming their negligence caused serious injuries to her baby. The medical defendants offered a substantial settlement, but Watkins — on the advice of her attorneys, the defendants in the present lawsuit— declined the offer.
The case proceeded to trial, and on the second day of trial one of Watkins’ attorneys made a series of intemperate and unwise comments:
* He called opposing counsel a liar;
* He called rulings of the court “bizarre,” “absurd,” “crazy” and “off the wall”;
* He told the judge that he had filed a motion to reconsider because she was “do *25 ing something so patent, so obviously wrong that it just — it defies my sense of right and wrong as to how I can’t get that through you”;
* He said of his client that the defense attorneys “could probably get [her] to say that she was an accomplice to the World Trade Center bombings [because sjhe’s not a very smart person and she’s not a very good historian”;
* He opined that the judge didn’t care that opposing counsel was lying to her;
* He asked the judge “How do you think you can get it right if you’re not going to hold lawyers to the standard of telling you the truth? You can’t get it right”; and
* He suggested that the judge try to resolve legal issues in advance, because she “almost always g[o]t it wrong” when she ruled from the bench but had a “very competent law clerk” who could help with written orders. R. 97-1.
The judge, to her credit, listened patiently to these harangues. She took a recess, after which she granted a mistrial based on the lawyer’s contumacious conduct.
After the court entered the mistrial order, Watkins agreed to settle the case at a lower amount than the defendants’ earlier offer, testifying that “it would be in the best interest of [her] child to accept this settlement.” R. 33-1 at 3. She found a new lawyer, and sued her old ones, alleging that “but for [her attorney’s] failure to follow [the judge’s] Orders,” she “would have received [significantly] more ... than ultimately was recovered.” R. 1 at 3, Pa-gelD 3. Because the premise of this lawsuit (that her original attorneys’ misconduct reduced the economic value of her medical malpractice claim) is entirely consistent with the premise of the settlement agreement (that the economic value of the malpractice claim had shrunk, making a previously unacceptable settlement acceptable), I would allow it to proceed.
The principle behind judicial estoppel is basic and longstanding: “where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.” Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). An equitable doctrine, it may be invoked at the court’s discretion to “prevent[ ] parties from playing fast and loose with the courts.” New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (internal quotation marks and citation omitted).
Several factors guide the application of judicial estoppel: (1) whether the party’s present position is “clearly inconsistent” with the position it took previously; (2) whether the earlier court actually accepted the party’s position; and (3) whether the party against whom judicial estoppel is invoked would “derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.” New Hampshire, 532 U.S. at 750-51, 121 S.Ct. 1808.
The first factor lies at the core: where a party’s later assertion is not inconsistent with its earlier one, neither the courts nor the opposing parties have any grounds to complain. That is exactly what happened here.
In settling the medical malpractice claim, Watkins testified that the settlement was in her daughter’s best interest. That remains consistent with the position she takes today: that her attorneys’ mishandling of the trial, prior to the settlement, injured her daughter by reducing the size of her recovery. A reasonable jury surely could conclude that settlement was in her daughter’s best interest because *26 of the attorney’s outbursts. The medical defendants offered a higher settlement before trial, and Watkins’s attorneys advised her not to accept it because they believed she was likely to receive even more through a trial. The key change between Time A (when a higher settlement was not sufficient) and Time B (when the lower settlement was sufficient) was the mistrial caused by the attorney’s conduct.
To rule otherwise would absolve attorneys for creating a weaker bargaining position for their clients. That cannot be right. Suppose Watkins and her lawyer had walked into settlement negotiations with the hospital with the understanding that they would accept any offer of $1 million or more. The hospital’s lawyers walk in, set their briefcases on the table, and say, “We won’t pay a dollar more than $10 million. Take it or leave it.” Watkins is overjoyed, but her lawyer cannot resist gloating. “We would have settled for $1 million,” he foolishly acknowledges. With this new information in hand, the hospital retracts the offer and proposes $1 million instead. Though understandably frustrated by her attorney’s conduct and by what happened as a result, Watkins nonetheless takes the new offer. She needs the money to care for her daughter now, and settling for $1 million is thus in her daughter’s best interest. Under the attorneys’ theory of the case, Watkins’s sensible cut-your-losses decision estops her from suing them for leaving $9 million on the table.
Shift the facts outside the legal arena, and nothing changes. Imagine Watkins wants to sell her car to raise money for her child’s medical bills. A potential buyer tells her he will pay $500 for it, but hoping to get a little more she takes it to the mechanic for a tune-up. The mechanic tunes up the car, but in the process he also smashes all the windows in an inexplicable fit of rage. At that point, the buyer offers Watkins $800 for it, which she accepts. Would anyone say that her acceptance of the $300 for the now-banged-up-car is inconsistent with a lawsuit against the mechanic for banging the car up in the first place?
Watkins, it is true, testified that her lawyer “rendered valuable services to” her. But that statement, too, remains consistent with her current position. Watkins does not deny some of the valuable services her attorneys rendered; she complains about the inexplicable outbursts that reduced her recovery. The tempestuous mechanic provided a valuable sendee too (a tune-up), but that does not insulate him from responsibility for smashing the car’s windows.
The absence of any inconsistency — any at all — in Watkins’s legal positions suffices to resolve this case. Even so, it is worth adding that the third factor (unfair advantage) counsels against judicial estoppel as well. If settling the claims against the medical defendants also disposed of Watkins’s legal malpractice claims against her attorneys, her attorneys labored under a serious conflict of interest when they recommended she settle. Why? The advice caused Watkins to give up her claims against them at no cost to themselves. Absent some evidence that the attorneys advised her of the conflict, I cannot say that Watkins received an “unfair advantage” against the conflicted attorneys when she sought to unravel the bind in which their earlier advice placed her. New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808; see also R.H. Stearns Co. v. United States, 291 U.S. 54, 61-62, 54 S.Ct. 325, 78 L.Ed. 647 (1934) (It is “a principle more nearly ultimate than either waiver or es-toppel ... that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.”).
*27 It is no business of ours, and assuredly not an “unfair advantage,” that the continuation of this lawsuit might permit Watkins’s daughter to “obtain another recovery against another party, arising out of the same transaction.” Maj. Op. at 28. The point of these allegations is that two sets of professionals wronged her: the medical defendants who botched the delivery and the attorney defendants who bungled the trial. If two sets of people injure someone, what is unfair about permitting Watkins to recover from both of them? Nor is there any risk of double recovery. All Watkins seeks is the difference between the damages she and her daughter received in her first lawsuit and the damages they would have received had her attorneys carried out their responsibilities in a professionally acceptable manner. The only risk is to the hope of being made whole, a hope Watkins cannot realize if the court cuts off the second lawsuit.
The majority seeing these issues differently, I respectfully dissent.