T.C. Memo. 2002-207


UNITED STATES TAX COURT


JAMES D. HORN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18502-99L.          Filed August 16, 2002.


P appeals under sec. 6330(d)(1), I.R.C., from R's determination to proceed by levy to collect unpaid Federal assessments of income taxes, failure to pay additions, and accrued interest for tax years 1990-94 and 1996.

1.  <u>Held</u>:  P was mentally competent when he signed Forms 4549-CG, Income Tax Examination Changes, for 1990-93; by signing Forms 4549-CG, P waived his rights to dispute the tax liabilities for those years prior to assessment and thereby conclusively acknowledged that he had an opportunity to dispute those liabilities within the meaning of sec. 6330(c)(2)(B), I.R.C.

2.  <u>Held</u>, <u>further</u>, P was mentally competent when he signed and filed his 1994 and 1996 income tax returns.

3.  Held, further, P is not entitled to relief from collection for any of the years in issue because he failed to establish his rights to any additional deductions for any of those years.

James D. Horn, pro se.

John Y. Chinnapongse, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BEGHE, Judge:  Petitioner seeks review under section 6330(d)(1)[1] of respondent's determinations to proceed with levies to collect unpaid assessments of individual income taxes, failure to pay additions, and accrued interest for 1990 through 1994 and 1996.  The taxable years and amounts of the assessments, as set forth in respondent's notices of determination, are as follows:

| Taxable Year | Amount of Assessment |
| --- | --- |
| 1990 | $41,031 |
| 1991 | 354,250 |
| 1992 | 213,651 |
| 1993 | 13,550 |
| 1994 | 9,569 |
| 1996 | 33,875 |
| Total | 665,926 |

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner claims that he was mentally incompetent when he signed his Federal income tax returns for the years in issue,[2] and when he signed Forms 4549-CG, Income Tax Examination Changes, for 1990 and 1991 through 1993, in which he accepted respondent's audit changes, agreed to immediate assessment of the deficiencies, and waived his right to challenge the assessments in the Tax Court. Petitioner has challenged the proposed levies on the sole ground that he does not owe the assessments because respondent failed to allow deductions for worthlessness of his stock in, or uncollectability of his loans to, his affiliated corporations, James Horn Construction Co. (Horn Construction) and Horn Enterprises.

We affirm respondent's determination to proceed with the proposed levies. Petitioner has failed to establish that he was

---

[2]Rule 60(c) provides that the "capacity of an individual * * * to engage in litigation in the Court shall be determined by the law of the individual's domicile." Rule 60(d) provides, among other things, that if the Court believes there is a serious question about an individual's competence to represent himself, "the Court, if it deems justice so requires, may continue the case until appropriate steps have been taken to obtain an adjudication of the question by a court having jurisdiction so to do, or may take such other action as it deems proper." Nothing in petitioner's statements in telephone conferences or papers filed during the pretrial phase of this case or in his demeanor and conduct at trial led the Court to believe that petitioner was incompetent to represent himself in this proceeding. Although petitioner had indicated, in a written objection to one of respondent's motions, that he wanted a continuance to provide more time to discover evidence to support his claims, including evidence he believed was in the possession of the Internal Revenue Service, petitioner did not move for or even request a continuance on the ground of incompetence to represent himself.

incompetent when he executed his income tax returns or the Forms 4549-CG in issue. By signing the Forms 4549-CG for 1990 through 1993, petitioner waived his right to challenge the existence or amount of his underlying tax liabilities for those years prior to assessment and thereby conclusively acknowledged that he had an opportunity to dispute those liabilities within the meaning of section 6330(c)(2)(B). Even if petitioner were entitled to dispute his tax liabilities for any of the years in issue, petitioner would not be entitled to any relief; petitioner failed to offer credible evidence to substantiate any additional deductions or even to indicate the taxable year or years in which they might have been properly allowed.

                         FINDINGS OF FACT

     The parties have stipulated some of the facts, and the stipulations of facts and the attached exhibits are incorporated herein. Petitioner resided in Modesto, California, when he filed his petition.

     At least for tax years into or through 1993, petitioner was the president and shareholder of two corporations that he had founded: (1) Horn Construction, a real estate developer, and (2) Horn Enterprises, a retail hardware business.

     On October 28, 1992, petitioner filed a joint Form 1040, U.S. Individual Income Tax Return, with his former spouse, Donna Kay Horn, for 1990, reporting total taxes due of $13,384 (of

which $4,328 had been paid by withholding) and an estimated tax penalty of $565. In or around 1994, petitioner and his former spouse filed a joint tax return for 1991 reporting total tax due of $22,828 (of which $522 had been paid by withholding) and an estimated tax penalty of $1,107.

After examining petitioner's 1990 return, respondent proposed to disallow a $50,000 deduction claimed on Schedule E, Supplemental Income and Loss, of petitioner's 1990 return for legal and professional fees, because petitioner could not substantiate the deduction. On May 23, 1994, petitioner signed a Form 4549-CG, accepting respondent's adjustment for 1990 and a resulting $15,348 deficiency, an addition to tax under section 6651(a)(1) of $3,836.75, and interest through June 15, 1994, of $5,523.28. Petitioner and his former spouse both signed the Form's "Consent to Assessment and Collection", which reads as follows:

> Consent to Assessment and Collection - I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus any interest as provided by law. * * *

This Form 4549-CG was signed on behalf of respondent by Revenue Agent Joe Urrutia.

Horn Enterprises dissolved at the end of 1993. In 1994, Horn Construction filed a chapter 11 bankruptcy petition.

During the period June 11 through July 1, 1993, petitioner was an admitted patient at the Modesto Psychiatric Center. The admitting and final diagnosis of the attending physician, John J. Jacisin, M.D., F.A.P.A., characterized petitioner as suffering from:

> AXIS I: Atypical bipolar disorder, depressed
> Delusional disorder [unspecified - admission]
> [persecutory type - discharge]
>
> AXIS II: Obsessive compulsive, histrionic traits.

The narrative portion of Dr. Jacisin's report concludes: "Throughout hospitalization he was fixated on his business concerns and becoming bankrupt. Conversation with the family indicated the situation was not nearly as severe as he proposed."

The report of an office visit by petitioner to Thomas W. Luck, M.D., on April 7, 1994, states the following primary impression: "Major depression and paranoid schizophrenia-- currently well controlled."

A letter dated August 5, 1994, from Dr. Jacisin to Dr. Luck, in support of a request for additional insurance coverage for office visits, states in part:

> Since my last letter to you of May 13, 1994, concerning
> Mr. Horn's progress, he has gradually become
> increasingly more anxious again, returning to a state
> in which he is beginning to tremble over his entire
> body. This is correlated with filing of Chapter 11 for
> his business. The bank has now taken over the
> business, drastically reducing his salary and his
> ability to support himself and his family. Other
> family members and employees who he felt in the past
> were in total denial of what was going on are now

having to face reality and are extremely angry with
him, something he is having a great deal of difficulty
tolerating.  When we saw him on 7/19, he looked like he
had regressed significantly.

*     *     *     *     *     *     *

We are making every effort to try to treat him intensely
on an outpatient basis to prevent further regression,
and unless we do, most likely he will have to be re-
hospitalized.

In or around December 1994, respondent began examining
petitioner's 1991 Federal income tax return and investigating his
Federal income tax liabilities for 1992 through 1994, for which
he had not yet filed returns.  The examination/investigation was
performed by Revenue Agent Joe Urrutia.

In 1995, Horn Construction's chapter 11 bankruptcy case was
converted to chapter 7.  Petitioner filed a personal chapter 11
bankruptcy petition in 1996.

On March 18, 1996, petitioner and his former spouse filed
original joint Forms 1040 for 1992, 1993, and 1994, listing total
income taxes of $62,481, zero, and $22,097, respectively, and a
penalty of $1,106 for failing to pay estimated taxes for 1992.
On March 18, 1996, petitioner and his former spouse also filed
joint Forms 1040X, Amended U.S. Individual Income Tax Return, for
1990 and 1991, seeking refunds of $26,627 and $52,760,
respectively, attributable to carrybacks of a net operating loss
claimed from 1993.  Petitioner and his former spouse did not pay

in full the taxes and penalty shown as owing by their 1992 and 1994 returns.

Shortly after March 18, 1996, Agent Urrutia proposed substantial adjustments to petitioner's returns. On the 1991 return, Agent Urrutia found that an exchange of five duplexes and rental properties owned by petitioner for a turkey ranch owned by Horn Construction did not qualify for section 1031 exchange treatment, requiring petitioner to recognize $497,000 in capital gain. With respect to tax years 1992 and 1993, Agent Urrutia took the position that $338,163 and $429,000, respectively, of losses petitioner claimed should be disallowed because they had been incurred by Horn Enterprises. These adjustments eliminated the net operating loss carrybacks from 1993 that petitioner and his former spouse claimed on their 1990 and 1991 amended returns.

Agent Urrutia also proposed late-filing and accuracy-related penalties for all years in issue. In order to persuade Agent Urrutia to concede the proposed penalties, petitioner submitted to Agent Urrutia medical records showing petitioner had been suffering psychiatric problems that, he argued, prevented him from timely and correctly preparing and filing his income tax returns.

On April 24, 1996, Agent Urrutia and his manager, Faith Priest, met at the Modesto office of the Internal Revenue Service with petitioner, petitioner's former spouse, Donna Kay Horn,

petitioner's accountant, Philip Kenneth Ware, C.P.A., who had prepared petitioner's late-filed 1992, 1993, and 1994 income tax returns and his 1990 and 1991 amended returns,[3] petitioner's attorney, James Ganser, and petitioner's daughter and bookkeeper, Susan Azevedo, to discuss the audit results and petitioner's request that respondent waive the late-filing and accuracy-related penalties. Agent Urrutia explained his adjustments, answered questions, and informed those present he would concede the penalties on the basis of the medical records petitioner had provided about his psychiatric problems. At the conclusion of the meeting, petitioner and his former spouse signed a Form 4549-CG, accepting Agent Urrutia's adjustments to their 1991 through 1993 returns, accepting disallowance of the carrybacks claimed on their amended returns for 1990 and 1991, and showing deficiencies in petitioner's 1991, 1992, and 1993 income taxes of $146,459, $108,404, and $15,762, respectively, plus substantial interest accruals on the unpaid balances. The Form 4549-CG contained the following waiver:

> Consent to Assessment and Collection - I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. It is

---

[3]Mr. Ware thereafter prepared petitioner's 1996 return.

understood that this report is subject to acceptance by the District Director.

Petitioner understood the significance of the Form 4549-CG he signed. He understood the specific tax issues raised by respondent, disagreed with some of respondent's conclusions, and discussed with his attorney and accountant the relevant benefits and burdens of accepting the adjustments. Ultimately, petitioner accepted the recommendation of his advisers and signed the Form 4549-CG containing a waiver of his right to challenge the adjustments prior to assessment and collection. Petitioner has not paid the liabilities shown by the Forms 4549-CG he signed.

Respondent accepted petitioner's 1994 return as filed. Petitioner has not paid the tax liability shown on his 1994 return.

On or about November 24, 1997, petitioner filed his 1996 Federal income tax return. Petitioner reported total tax due of $40,192. On May 5, 1998, respondent accepted petitioner's 1996 return as filed. Petitioner did not pay in full the tax liability shown on his 1996 return.

Respondent assessed the amounts determined on the Forms 4549-CG for 1990 through 1993, as well as the amounts shown on petitioner's returns for 1994 and 1996.

On February 9, 1999, respondent sent petitioner, by certified mail, two notices of intent to levy and petitioner's right to request a hearing, both containing the language required

by sections 6330 and 6331.  One of the notices was for tax years 1991 through 1994; the other notice was for tax years 1990 and 1996.

Petitioner timely filed two requests, corresponding to the two notices, for a section 6330 hearing.  In his requests for hearing, in response to the portion of the form asking why the taxpayer does not agree with the proposed levy, petitioner stated:  "I was absent for three years due to illness and am in the process of restructuring a stockholders note that will have a significant effect on my tax consequences I request a personal interview."

Respondent's Appeals officer held a hearing with petitioner by telephone.  Petitioner did not provide any documentary or other evidence to the Appeals officer that he was medically incapable of filing returns and waiving his rights to contest his tax obligations prior to assessment.  Petitioner was unable to make the Appeals officer understand how the current restructuring of a stockholder note would have any effect on his prior years' tax liabilities, nor did he present any evidence to support any reduction in those liabilities.  Instead of responding to the Appeals officer's questions, petitioner talked about a perceived conspiracy involving the vice president of Horn Construction, the CIA, the FBI, the IRS, and the "Iranian Mafia".  The Appeals officer also spoke on the telephone with petitioner's accountant,

who agreed with respondent's Appeals officer that petitioner should submit an offer in compromise. The accountant later informed the Appeals officer that petitioner was not interested in pursuing an offer in compromise. Respondent's Appeals officer concluded that respondent should proceed with collection because petitioner failed to raise any legitimate defenses or alternatives.

On November 10, 1999, respondent issued petitioner Notices of Determination Concerning Collection Actions under section 6320 and/or 6330, under which he determined to proceed with collection by levy.

Petitioner timely filed a petition with this Court pursuant to section 6330(d)(1), appealing respondent's determinations to proceed with collection by levy, alleging the "the deficiency (or liabilities) as determined by the Commissioner are in income taxes for the years 1990 through 1996". In the petition, petitioner claimed as follows:

> Taxpayer was mentally ill from 1993 to 1996 and unable to make rational decisions. The service [sic] is aware of the illness.

> The taxpayer entered the year 1990 with a Net Fair Market Value of Assets over Liabilities of $22,000,000.

> The taxpayer currently has no assets, only liabilities.

> Real estate values have increased since 1990.

> The IRS has in examinations of several of the years, added tax and the taxpayer has never seen or

does not remember seeing any support for the adjustments in question.

Records and working papers have never been made available to the taxpayer or the taxpayer is unaware that records and or working papers were provided to the taxpayer from the agents to support the adjustments.

Sale of assets, settlements, and foreclosures has occurred at substantially less than fair market value without the taxpayer's knowledge.

Expenses paid by the taxpayer for the taxpayer's corporation Horn Construction were never allowed and loans made to the corporation by Mr. Horn as an individual were never allowed as a deduction on the individual return.

The case was originally set for trial on the Court's October 2000 San Francisco trial session. On July 27, 2000, the Court granted respondent's uncontested motion for continuance, which was based on respondent's then stated intention to file a motion for partial summary judgment contesting petitioner's right to dispute the tax liabilities for 1990 through 1993. The case was thereafter reset for trial on the Court's March 2001 San Francisco trial session.

Respondent, in due course, filed a motion to dismiss for lack of jurisdiction and to strike as to 1995. The ground for respondent's motion was that respondent had not sent petitioner a notice of lien or levy with respect to 1995. The Court granted respondent's motion. The record in this case contains no evidence regarding petitioner's Federal income tax return, payments, examination or determinations by respondent, or any

other matter concerning petitioner's 1995 Federal income tax liability.

By January 12, 2001, respondent had responded to petitioner's document requests for copies of returns and amended returns of Horn Construction and Horn Enterprises for 1990 through 1995, documents in respondent's examination files for petitioner for 1990 through 1993 and for petitioner's corporations and a sole proprietorship for 1990 through 1995, and documents in respondent's files regarding the bankruptcy filings of petitioner and Horn Construction.

Respondent never filed a motion for partial summary judgment in this case. However, respondent did file a motion to sever and try separately the threshold issue of whether petitioner's income tax liabilities for 1990 through 1993 were properly before the Court. On January 25, 2001, petitioner filed his opposition to respondent's motion to sever: Petitioner opposed the severance on the following grounds:

> there may be some overlapping testimony on both his
> [mental] condition and the underlying tax issues * * *.
> HORN has not received from the IRS the documents he
> needs to prove his case and will probably need
> additional time beyond March 5, 2001 to adequately
> prepare for trial.

> * * * * * * *

> Wherefore, HORN requests that the Court not grant
> this motion but that the court grant a continuance so
> that HORN can file the appropriate motion to force the
> IRS to provide the information he needs to prepare his
> case. Numerous records, including bank statements,

were given to the IRS during the audit; and HORN has been requesting these records for over two years, and the IRS failed and continues to fail to produce them.

The informal request for continuance mentioned in petitioner's objection to respondent's motion was not couched in a motion; the Court did not grant the request. The case was tried at the Court's March 2001 San Francisco trial session. On March 15, 2001, at the beginning of the trial, the Court granted respondent's oral motion to withdraw respondent's motion to sever.

Petitioner failed to comply with the Court's orders that he respond properly to respondent's requests for admissions and to respondent's written interrogatories and document requests. Respondent's discovery requests reflected, among other things, respondent's efforts to bring out all evidence regarding petitioner's mental condition during all relevant periods, including medical records, and any evidence petitioner might have to support his claims of unreported losses and the tax years in which they had occurred. At the trial, petitioner offered no documentary evidence regarding his mental condition in addition to the reports previously referred to, other than records of petitioner's receipt of psychotherapy services at least once in 1999 and at least 9 times in August through November 2000. Petitioner offered no evidence to support any additional deductions or to indicate the taxable year or years in which they

properly might be allowed.  Petitioner failed to file a brief in accordance with the Court-ordered briefing schedule.

OPINION

This is an appeal under section 6330(d)(1) from respondent's determinations to proceed with proposed levies against petitioner's property to collect unpaid Federal income taxes, failure to pay additions, and accrued interest for 1990 through 1994 and 1996.  Section 6331(a) allows the Commissioner to collect by levy any tax not paid within 10 days after the Commissioner provides the taxpayer with notice and demand for payment.  With certain exceptions not relevant here, the Commissioner is obliged to provide the taxpayer with notice before proceeding with collection by levy on the taxpayer's property, including notice of the administrative appeals available to the taxpayer.  Sec. 6331(d).

As part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3401, 112 Stat. 685, 746, Congress enacted section 6330, which generally provides that the Commissioner may not proceed with collection by levy on a taxpayer's property until the taxpayer has received notice of and the opportunity for an Appeals Office hearing to review the proposed levy.  Sec. 6330(a)(1); <u>Pierson v. Commissioner</u>, 115 T.C. 576 (2000); <u>Sego v. Commissioner</u>, 114 T.C. 604, 608 (2000).  If the taxpayer is dissatisfied with the

Appeals officer's determination, the taxpayer may appeal the determination to the Tax Court.  Sec. 6330(d)(1).

Petitioner has asked us to prevent respondent from proceeding to collect the assessments by levy because respondent failed to allow petitioner alleged deductions, even though petitioner (1) never claimed the deductions in a tax return,[4] and (2) apparently agreed, in the Forms 4549-CG that he signed, that respondent could disallow the deductions and assess the resulting deficiencies without allowing petitioner an opportunity to dispute the assessments in this Court.

Notwithstanding his failure to claim the deductions in a return for any year before the Court and his explicit waivers of the right to challenge respondent's determinations for the years 1990 through 1993, petitioner has sought to challenge the

---

[4]As best we can discern against the background of respondent's disallowances of losses petitioner claimed on his 1992 and 1993 returns that respondent determined had been incurred by Horn Enterprises, petitioner now wishes to claim losses for some year or years from worthlessness of his stock and debt interests in Horn Construction and Horn Enterprises. Insofar as petitioner wishes to claim deductions for "Expenses paid by the taxpayer for the taxpayer's corporation Horn Construction [that] were never allowed", petitioner's payments of such expenses would be disallowed as deductions and treated as capital contributions or loans that he only could recover as worthless stock or debt losses, see, e.g., Betson v. Commissioner, 802 F.2d 365, 368-371 (9th Cir. 1986), affg. on this issue T.C. Memo. 1984-264; Gantner v. Commissioner, 91 T.C. 713, 725 (1988), unless he showed he had paid such expenses to protect his own trade or business, see, e.g., Gould v. Commissioner, 64 T.C. 132, 134-135 (1975); Jenkins v. Commissioner, T.C. Memo. 1983-667.

existence or amount of his underlying tax liabilities in this proceeding. Petitioner did not raise any other relevant issues, such as "appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives", see sec. 6330(c)(2)(A), in his request for a section 6330 hearing, at the hearing before respondent's Appeals officer, or in his petition to this Court.

Section 6330(c)(2)(B) provides:

> (B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability <u>or did not otherwise have an opportunity to dispute such tax liability</u>. [Emphasis added.]

Petitioner did not receive a notice of deficiency for any of the years in issue. Petitioner has claimed that he may challenge the existence or amount of his underlying tax liabilities in this proceeding because he did not "otherwise have an opportunity to dispute * * * [his] tax liability" within the meaning of section 6330(c)(2)(B). We must therefore address whether the validity of the underlying tax liability is properly in issue for any of the tax years before us.

<u>Petitioner's Challenges to His 1990 and 1991-1993 Tax Liabilities</u>

Respondent claims that petitioner, by signing Forms 4549-CG for 1990 through 1993, waived his right to challenge the proposed assessments and should be deemed to have had an opportunity to

dispute his tax liabilities.  We agree.  In <u>Aquirre v.</u>

<u>Commissioner</u>, 117 T.C. 324, 327 (2001), we specifically held that

a taxpayer who had signed a Form 4549-CG could not challenge the

underlying tax liability stated on the Form:

> By signing the Form 4549, petitioners explicitly waived
> the right to contest in the Tax Court their tax
> liability for the years included in the Form 4549.
> * * * The fact that section 6330 now provides an
> opportunity to contest tax liability for taxpayers who
> did not receive a notice of deficiency, sec.
> 6330(c)(2)(B), provides no consolation to petitioners
> who themselves made the choice not to receive such
> notice, see <u>Sego v. Commissioner</u>, 114 T.C. 604, 611
> (2000) (taxpayers who deliberately refused to accept
> delivery of the notices of deficiency repudiated the
> opportunity to contest the notices of deficiency in Tax
> Court).

Petitioner has alleged that his waivers were ineffective

because he was mentally incompetent when he signed the Forms

4549-CG.[5]  In his request to respondent for a section 6330

---

[5]Respondent argued in a prehearing motion that petitioner is estopped to challenge, on grounds of incompetence, the validity of the Forms 4549-CG that he signed.  Respondent argues that he relied on the Forms in proceeding to assess the taxes rather than first issuing a notice of deficiency (as would have been required prior to assessment under sec. 6213(a)).  If the Forms 4549-CG are held to be entirely invalid and ineffective, then the time to issue a notice of deficiency and assess the resulting tax may have expired.  Respondent argued that because he would be prejudiced by the expiration of the period of limitations, petitioner is estopped to deny the validity of the Forms 4549-CG on the grounds that he was incompetent when he signed them.  In support of his argument, respondent cited <u>Hollman v. Commissioner</u>, 38 T.C. 251, 260 (1962) (citing <u>Stearns Co. v. United States</u>, 291 U.S. 54, 61 (1934)); <u>Halper v. Commissioner</u>, T.C. Memo. 1997-58; <u>Dale v. Commissioner</u>, T.C. Memo. 1982-654. We need not decide whether and to what extent estoppel might apply.  Expiration of the period of limitations is an affirmative
(continued...)

hearing, petitioner alleged: "I was absent for three years due to illness". In his petition to this Court for review of respondent's determination that collection should proceed, petitioner alleged: "Taxpayer was mentally ill from 1993 to 1996 and unable to make rational decisions. The service [sic] is aware of the illness."

In assessing petitioner's mental competence at the various relevant points in time, we look to State law for guidance, as Federal courts generally do when, as here, there is no established body of Federal common law in point. See, e.g., Harrell v. United States, 13 F.3d 232, 235 (7th Cir. 1993); Powers v. U.S. Postal Serv., 671 F.2d 1041, 1045 (7th Cir. 1982); Furnish v. Commissioner, 262 F.2d 727, 733-734 (9th Cir. 1958), affg. in part and remanding in part Funk v. Commissioner, 29 T.C. 279 (1957); see also Berger v. Commissioner, T.C. Memo. 1996-76.

Cognitive capacity is the standard generally used for determining ability to enter into an enforceable contract,[6] both

---

[5](...continued)
defense that must be pleaded or it is waived, Robinson v. Commissioner, 117 T.C. 308, 312 (2001), and petitioner did not so plead.

Even if we were to assume for purposes of argument that estoppel does not apply, petitioner remains unable to prevail because of our holding that he was competent to sign the Forms 4549-CG.

[6]We apply contract principles in interpreting, applying, and determining the enforceability of waiver documents. Mecom v.
(continued...)

in California, petitioner's residence,[7] see <u>Smalley v. Baker</u>, 69 Cal. Rptr. 521, 527 (Ct. App. 1968); Cal. Prob. Code sec. 812 (West Supp. 2002), and in most other States, see 1 Restatement, Contracts 2d, sec. 15 (1981), although a "compulsion" or "irresistible impulse" standard has been applied on occasion, see <u>Faber v. Sweet Style Manufacturing Corp.</u>, 242 N.Y.S.2d 763 (Sup. Ct. 1963). Undue influence, taking advantage of a contracting party's impaired ability to make rational decisions, may provide a ground for rescission if the other party had actual knowledge, see <u>Smalley v. Baker</u>, <u>supra</u>, or reason to know, see 1 Restatement, Contracts 2d, <u>supra</u>, of the putative incompetent's vulnerability.

Under all formulations of the standard, the person seeking to avoid the contract has the burden of proving his incompetence. See Cal. Prob. Code sec. 810(a) (West Supp. 2002); <u>Holman v. Stockton Savs. & Loan Bank</u>, 122 P.2d 120 (Cal. Ct. App. 1942); <u>Faber v. Sweet Style Manufacturing Corp.</u>, <u>supra</u> at 766; 1 Restatement, Contracts 2d, <u>supra</u>, Illustration 1(c) (1981). In

---

[6](...continued) <u>Commissioner</u>, 101 T.C. 374, 384 (1993) (Form 872-A), affd. without published opinion 40 F.3d 385 (5th Cir. 1994); <u>Schulman v. Commissioner</u>, 93 T.C. 623, 639 (1989) (Form 872-A); <u>Korff v. Commissioner</u>, T.C. Memo. 1993-33 (Form 870-P).

[7]We note that, on the arguably related issue of an individual's competence to litigate in this Court, the Court's Rule 60, which is patterned on Fed. R. Civ. P. 17 and was adopted in its present form in 1973, looks to the law of the individual's domicile. 60 T.C. 1094; see <u>supra</u> note 2.

any event, without reference to State law on the subject of incompetence, petitioner bears the burden of proof on this subject in this Court. Rule 142; see <u>Ravetti v. Commissioner</u>, T.C. Memo. 1993-343, affd. without published opinion 38 F.3d 1218 (9th Cir. 1994).

Petitioner has failed to offer any credible evidence[8] to show: (1) That he lacked capacity to understand the tax returns and Forms 4549-CG that he signed, (2) that respondent knew or should have known of his alleged incapacity, or even (3) that he signed the Forms 4549-CG under compulsion of mental disease or disorder. Moreover, the evidence persuades us that petitioner understood the documents he signed and that his decisions to sign were entirely rational.

In May 1994, when petitioner signed Form 4549-CG for the 1990 tax year, he was being treated for his psychiatric problems

---

[8]The only evidence petitioner offered, other than his testimonial assertions regarding his mental problems, were copies of medical records showing that in 1993 he had been hospitalized 3 weeks for depression and schizophrenia and was treated on an outpatient basis for these conditions around the time in 1994 he signed the first Form 4549-CG for 1990, and again at least once in 1999 and 9 times in August through November 2000. These medical records do not show that petitioner lacked the cognitive ability to understand what he signed or that he signed under "compulsion". The records also do not cover the times when petitioner signed the returns and the second Form 4549-CG. Respondent objected to admissibility of the records on relevance, hearsay, and authentication grounds. The records and petitioner's testimony do not establish that petitioner lacked cognitive capacity to understand the documents he signed or that he signed under "compulsion".

on an outpatient basis.  However, nothing in the medical records offered by petitioner indicates he lacked the cognitive ability to understand what he was signing.  Indeed, the records indicate petitioner had a better grasp of reality about his business situation than his family and employees.

With respect to petitioner's signing of Form 4549-CG for 1991, 1992, and 1993, the uncontradicted evidence establishes that respondent's agents believed petitioner was competent, and petitioner offered no evidence that their belief was unreasonable.  Petitioner signed the Form 4549-CG for those years at a meeting attended by Agent Urrutia and his manager, Faith Priest, on behalf of respondent.  Both Agent Urrutia and Ms. Priest testified credibly they believed petitioner understood the terms of the Forms 4549-CG that he signed.  Both testified they would not have accepted the Forms 4549-CG from petitioner if they believed he lacked the mental capacity to sign them.  Even against the background of their acceptance for settlement purposes that petitioner's past psychiatric difficulties excused his late filings and return inaccuracies, petitioner offered no credible evidence to show that Agent Urrutia and Ms. Priest were or should have been aware of any lack of mental capacity or presence of vulnerability.

Petitioner was represented at the meeting by legal counsel and a certified public accountant, and was accompanied by his

former spouse and his daughter (who also maintained his books and records).  That petitioner's interests were represented at the meeting by his own lawyer and accountant, that he was supported at the meeting by family members, that the terms of the settlement were fair and reasonable to petitioner, and that petitioner's former spouse also signed the agreements, dispel any notion of overreaching or undue influence by or on behalf of respondent.

Finally, petitioner's statements at trial in this case convince us he fully understood the Form 4549-CG when he signed it.  At trial, petitioner asked the following questions of, and received the following responses from, Agent Urrutia:

> Q.  In the '96 meeting when Mrs. Horn, and myself, and my attorney representing me, and Mr. Ken Ware, did not the meeting continue to go on and on with breaks being called because I refused to sign the forms, and my attorney kept telling me repeatedly, if you don't sign these, you're going to be out in the streets with no money because of the relationship between the lawsuit between Horn Construction, which was in bankruptcy and personal?  All income would stop, and they kept pressuring me, and I kept saying these returns are not correct.
>
> [following objections to the form of the question]
>
>     \*    \*    \*    \*    \*    \*    \*
>
> Q.  Did I not protest that I did not want to sign the forms at that meeting, because I did not believe that they were accurate, and my stockholders note was missing.
>
> A.  I don't recall you mentioning that at all.
>
> Q.  Okay.

A.  I do recall, and I will say that we did stop a few times for you to converse with your attorney --

Q.  Yes.

A.  -- and your accountant, and that those -- if that was discussed then, I wasn't there, present.

Q.  Okay.  Did we -- I finally not give up and sign because Faith Priest said that she would give me consideration about my concerns with the stockholders note being missing, and that if I could prove to her at a later date, she would consider my concerns about the stockholders notes, and all the debts being missing?

A.  I don't recall that being said.

Thus, even at the time of trial, petitioner recalled expressing at the meeting (at least to his attorney) misgivings about accepting the Form 4549-CG because he thought he should be entitled to additional deductions.  He recalled being convinced by his lawyer and accountant to accept the changes and proceed with the Form 4549-CG.  Presumably, petitioner's lawyer and accountant recommended that he accept the agreement because of the significant concessions offered by respondent (waiver of the penalties).  Petitioner's own words at trial show he had a full recollection of the agreement he signed and a full understanding of its significance at the time he signed it.

We find that petitioner was competent to understand the Forms 4549-CG that he signed, and we hold that the Forms 4549-CG are binding on him.  By signing the Forms 4549-CG, petitioner waived his rights to dispute in the Tax Court his tax liabilities for the tax years 1990 through 1993 prior to assessment; he

thereby conclusively acknowledged that he had an opportunity to dispute the liabilities. As a result of the waivers contained in the Forms 4549-CG, petitioner is barred by section 6330(c)(2)(B) from challenging in this proceeding the existence or amount of his underlying tax liabilities for those years.

Petitioner's Challenge to His 1994 and 1996 Tax Liabilities

Petitioner argues he was incompetent when he signed his 1994 and 1996 returns and should be allowed in this proceeding to challenge the validity or amount of the underlying tax liabilities shown due on those returns because he previously had no opportunity to dispute the liabilities. Because petitioner did not pay the tax liabilities shown on these returns, the assessments for 1994 and 1996 were based on the amounts set forth on those returns, rather than on adjustments made by respondent.[9] Petitioner did not file or attempt to file amended returns for these years. Nor did petitioner otherwise inform respondent before initiation of collection action that petitioner disputed the liabilities shown on those returns.

---

[9]The Commissioner is required to assess the tax shown on a taxpayer's return. Sec. 6201(a)(1). The amount shown as the tax by a taxpayer upon his return does not, by definition, constitute a "deficiency". Sec. 6211(a); see also Wilson v. Commissioner, 118 T.C. 537 (2002). The restrictions on assessment of deficiencies (requiring in general that a notice of deficiency be sent to the taxpayer, and that the taxpayer be given an opportunity to petition this Court) do not apply to the amount shown as the tax by the taxpayer on his own return. See sec. 6213(a).

Petitioner has not offered any credible evidence to persuade us he was mentally incompetent when he signed the returns for the later years 1994 and 1996. Insofar as petitioner challenges the assessments for 1994 and 1996 on the ground he was incompetent when he signed and filed the returns, we reject petitioner's challenge on the same grounds on which we have upheld the validity of the Forms 4549-CG for 1990 and 1991, 1992, and 1993. In so doing, we do no more than assume without deciding that the assessments could be invalidated if petitioner had been incompetent when he signed and filed the returns.

We now turn to petitioner's contention that section 6330(c)(2)(B) entitles him to challenge respondent's assessments of the tax liabilities shown on his 1994 and 1996 returns because he received no statutory notice of deficiency for such liabilities and did not otherwise have an opportunity to dispute them. Respondent contends petitioner cannot challenge the validity or amount of the underlying tax liabilities he reported for 1994 and 1996 because the assessments were based on petitioner's own returns.[10] The only legal argument respondent

---

[10]We note that, after respondent's brief was filed, the Internal Revenue Service published additions to the Internal Revenue Manual instructions to Appeals officers in section 6330 collection proceedings that would appear to contradict respondent's litigation position in this case with respect to 1994 and 1996. 4 Administration, Internal Revenue Manual (CCH), sec. 8.7.2.3.8, at 27,286 provides in part:

(continued...)

offers in support of his contention is the recital that tax
return positions are treated as admissions unless overcome with
cogent evidence they are wrong.  See, e.g., Waring v.
Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), affg. per curiam
T.C. Memo. 1968-26; Lare v. Commissioner, 62 T.C. 739, 750
(1974), affd. without published opinion 521 F.2d 1399 (3d Cir.
1975).

This is the first case in which the Commissioner and a
taxpayer have asked us to address the taxpayer's ability to
challenge collection of the tax assessed on the basis of his own

[10](...continued)
(6)  Appeals' interpretation of have [sic] an
opportunity to dispute such tax liability is that the
taxpayer must be ADVISED, in writing of the opportunity
to dispute whatever the issue is by going to Appeals,
for example, in some letter, publication or similar
correspondence.  We do not assume that taxpayers are
aware of their legal rights unless they have been
advised.

a.  Having an opportunity to pay the tax and file a
claim for refund, and not having done so, does not
constitute an opportunity to dispute the liability.

b.  Also, not having filed an amended return during the
applicable time period does not constitute an
opportunity to dispute the liability.

c.  Having an opportunity to dispute the liability
means an opportunity occurring before the claim period,
(in most cases, this means before assessment, but in
all cases it means before payment).  This may be the
chance to go to Tax Court, or otherwise having the
chance to go to Appeals (whether deficiency or non-
deficiency cases.)

return on the ground he "did not otherwise have an opportunity to dispute such tax liability" within the meaning of section 6330(c)(2)(B).

We need not and do not answer this question posed by the parties in this proceeding for the tax years 1994 and 1996. Because petitioner failed to take advantage of any of the numerous opportunities he was afforded to specify his alleged losses and the years in which they occurred and to introduce evidence in support of them, we leave the resolution of this question to another day.

Petitioner Failed To Show His Right to Deductions

Petitioner failed to state and quantify his claims for loss deductions in either his request for a section 6330 hearing or in his petition to this Court. He was unable to make the Appeals officer understand his claims for any of the years in issue, and he failed to introduce any evidence in support of his claims at the section 6330 hearing. Petitioner failed to file a brief in answer to respondent's opening brief, as he had been ordered to do in the Court-ordered briefing schedule.[11] However, we need not reject petitioner's contention on any of the foregoing grounds. Cf. Aquirre v. Commissioner, 117 T.C. 324, 327 (2001).

---

[11]Petitioner's failure to file a brief would suffice to reject petitioner's contention. See Rule 123; Stringer v. Commissioner, 84 T.C. 693, 704-705 (1985), affd. 789 F.2d 917 (4th Cir. 1986); see also Petzoldt v. Commissioner, 92 T.C. 661, 603 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

It suffices that petitioner failed to produce any evidence in this proceeding to support his claims of unreported losses for any of the years in issue. See Rule 149(b). Petitioner failed to comply with the Court's orders compelling him to respond properly to respondent's requests for admissions and to respondent's discovery requests relating to his claims of unreported losses. At trial, petitioner had no evidence to present to show his entitlement to additional deductions. As in Smith v. Commissioner, T.C. Memo. 2002-59, in which we recently sustained the Commissioner's determination to proceed with collection, "petitioner did not provide at trial any evidence, in the form of either testimony or documentation, to support his claim to any additional deduction." In attempted aid of his effort to compel respondent to help petitioner uncover evidence that would substantiate his claims, petitioner has instead made unsubstantiated assertions that his alleged losses were caused by a conspiracy in which respondent was a participant.

Taxpayers who dispute the Commissioner's disallowance of deductions claimed on their returns must show that they satisfied the specific statutory requirements entitling them to the claimed deductions. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Davis v. Commissioner, 81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). While the Court may estimate the amount of allowable deductions where a

taxpayer establishes his entitlement to, but not the amount of, the deductions, Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), any such estimate must have a reasonable evidentiary basis, Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without a reasonable evidentiary basis, the Court's allowance of deductions would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

In the case at hand, petitioner argued that once upon a time his shares in Horn Construction and Horn Enterprises were worth millions of dollars, and that now they are worthless. A taxpayer's loss, however, is limited to his adjusted basis in the property, not the property's highest fair market value. Sec. 165(b). In general, a loss resulting from worthless stock is deductible only in the year the stock becomes worthless,[12] see sec. 165(g)(1), and does not enter into the computation of net operating loss carrybacks and carryforwards, sec. 172. Even if we accepted petitioner's vague and unsupported allegations of value, petitioner offered no evidence to show his adjusted basis in the stock, or when the stock became worthless. Likewise, there is no evidence in the record of a stockholder note and its

---

[12]It is noteworthy that petitioner's taxable year 1995, the year in which Horn Construction's chapter 11 bankruptcy case was converted to chapter 7, is not before the Court in this proceeding. On neither his 1994 return nor his 1996 return did petitioner claim any loss with respect to his stock or debt interest in Horn Construction.

worthlessness.  See sec. 166(a).  Thus, petitioner presented no evidence to support a deductible loss in any of the years in issue.  Had he done so, we would also have to consider whether any of the loss-limitation provisions contained in the Code apply.  See, e.g., secs. 165(c), (g), 166(d), 267(a), 1211(b), 1212(b).  Petitioner did not address any of these issues.

Petitioner argued in his request for continuance and at trial that he needed more time to locate records to support his alleged deductions.  We shall not overturn and delay giving effect to respondent's determinations to proceed with collection on the ground that petitioner should have another opportunity to dispute the liabilities.  The collection actions in the case at hand relate to taxes due more than 5 to 10 years ago.  We shall not allow respondent's collection actions to be held hostage to petitioner's allegations of possible deductions while he tries to dragoon respondent into providing the evidence to support them.

Petitioner has failed to establish grounds for enjoining respondent from proceeding by levy to collect the assessments at issue.  We therefore sustain respondent's determinations to proceed with collection.

To give effect to the foregoing,

Decision will be entered

for respondent.