T.C. Memo. 2004-100


UNITED STATES TAX COURT



JOHN A. ROBERTS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7316-02L.            Filed April 9, 2004.


        P timely petitioned this Court to review R's
determination to proceed with collection of assessments
against P for 1982, 1987, and 1988.  P alleges that
extensions of the sec. 6502(a)(1), I.R.C., period of
limitations on collection of those assessments were
improperly obtained and are, therefore, invalid.  P
further alleges that the extension covering 1982 is
untimely as applied to a 1983 assessment for that year
because it was executed after the sec. 6502(a)(1),
I.R.C., period of limitations on collection with
respect to that assessment had expired.

        1.  <u>Held</u>:  Pursuant to the presumption of official
regularity, the extensions are deemed to be validly
obtained.

        2.  <u>Held</u>, <u>further</u>:  The determination by R's
Appeals officer that the extension covering 1982 was
timely with respect to a 1983 assessment is supported
by the evidence.

3. Held, further:  R's determination does not constitute an abuse of discretion and is sustained.


Hersy Jones, Jr., for petitioner.

Alvin A. Ohm, for respondent.


MEMORANDUM OPINION


HALPERN, Judge:  Pursuant to section 6330(d), petitioner seeks review of respondent's determination to proceed with collection of income taxes and additions to tax for calendar years 1982, 1987, and 1988 (sometimes, the years in issue).

Unless otherwise indicated, all section references are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

## Background

This case was submitted for decision without trial, pursuant to Rule 122.  Facts stipulated by the parties are so found.  The stipulation of facts, with attached exhibits, is included herein by this reference.  Petitioner objects to two of the exhibits as being irrelevant.

At the time the petition was filed, petitioner resided in Coppell, Texas.

Respondent assessed taxes, interest, and penalties for the years in issue as follows:

|  | Date of |  |  |  |
| Year | Assessment | Tax | Interest | Penalties |
| 1982 | 6/6/83 | $11,468 | $235 | $834 |
| 1982 | 8/12/85 | 2,321 | -- | 1,161 |
| 1982 | 9/17/01 | -- | 55 | -- |
| 1987 | 11/28/88 | 6,835 | 147 | 36 |
| 1988 | 7/17/89 | 9,209 | 117 | 53 |

Literal transcripts (MFTRA-X[1]) of petitioner's accounts for the years in issue show that, after application of petitioner's payments for those years, the outstanding balances due (including interest and penalties not yet assessed), as of December 31, 2001, were as follows:

|  |  | Accrued | Accrued |
| Year | Tax | Interest | Penalties |
| 1982 | -- | $60,391 | -- |
| 1987 | $1,682 | 4,232 | $442 |
| 1988 | 3,548 | 6,940 | 793 |

On October 8, 1991, petitioner signed two Internal Revenue Service (IRS) Forms 900, Tax Collection Waivers, which, on their face, extend the period of limitations on collection of assessed

---

[1] "A literal transcript is a transcript in 'plain English' with a minimum of 'computerese'." Keene v. Commissioner, T.C. Memo. 2002-277 n.7. Each of the transcripts in evidence is derived from current account information in respondent's master file. In general, transcripts are obtained by entering various command codes (such as MFTRA or TXMODA) into respondent's integrated data retrieval system (IDRS) in order to obtain a particular transcript. (IDRS is essentially the interface between respondent's employees and respondent's various computer systems.) See Crow v. Commissioner, T.C. Memo. 2002-149 n.6.

amounts outstanding (plus interest, penalties, and other additions) for 1982 until December 31, 2005, and for 1986 and 1987 until December 31, 2004 (together, the 1991 extensions).

The TXMODA transcript of petitioner's account for 1982 reflects the October 8, 1991, extension to December 31, 2005, and what appear to be three earlier extensions of the period of limitations on collection of 1982 liabilities:

| Date of Extension | New Expiration Date |
| --- | --- |
| 5/26/88 | 12/31/93 |
| 3/29/90 | 12/31/92 |
| 5/11/90 | 12/31/94 |

The MFTRA-X transcript for 1982 only reflects the October 8, 1991, extension to December 31, 2005.

On July 13, 1992, petitioner executed an IRS Form 433-D, Installment Agreement, covering the years in issue (as well as other taxable years not involved herein) pursuant to which he agreed to make monthly payments of $200 beginning August 5, 1992, and for each month thereafter, until his liability for all years was paid in full. The MFTRA-X transcripts reflect a series of $200 (and, in a few cases, lesser) payments beginning May 4, 1994, and continuing, generally on a monthly basis for some (but not all) years, until January 4, 2001, when the last payment was credited to petitioner's account. All but six of the payments were credited to 1982.

On July 3, 2001, respondent mailed a Final Notice-Notice of Intent to Levy and Notice of Right to a Hearing (the notice of levy) to petitioner. The notice of levy states that petitioner owes $445[2] of tax for 1982, $1,682 of tax and $4,495 in "statutory additions" for 1987, and $3,548 of tax and $7,673 in "statutory additions" for 1988. The notice of levy also states that "the amount(s) shown does not include accured [sic] penalties and/or interest."

On or about July 10, 2001, petitioner submitted to the IRS Appeals office an IRS Form 12153, Request for a Collection Due Process Hearing. In his request, petitioner states his grounds for requesting the hearing as follows:

> I did not consent to extension of time to collect the taxes. The Form was blank when I signed it.

On December 21, 2001, Appeals Officer Dan Mazaroli sent a letter to petitioner's representative and, on January 8, 2002, he sent a letter to petitioner, both letters requesting that he be contacted in order to schedule the requested hearing. An exchange of letters between Appeals Officer Mazaroli and petitioner's representative dated January 16, 2002, and

---

[2] Both the certificate of assessments and payments and the MFTRA-X transcript for 1982 show that, subsequent to the July 3, 2001, issuance of the notice of levy, a $500 "overpaid credit" and an offsetting $55 interest assessment were applied to 1982, which would account for the zero balance of tax owed for that year, as of Dec. 31, 2001, that is reflected on both.

January 18, 2002, respectively, confirms that a telephone conference between the two had taken place and that petitioner's opposition to collection of his outstanding liabilities for the years in issue was based primarily upon the following facts alleged by petitioner:

(1) On October 8, 1991, while residing in Los Angeles, California, petitioner met with an employee of respondent's Los Angeles office (the IRS employee) for the purpose of negotiating and executing an installment payment agreement as a means of discharging his outstanding liabilities for several tax years, including the years in issue.

(2) The IRS employee told petitioner that he would be required to sign extensions of the period of limitations on collection (Forms 900) in order to obtain an installment agreement.

(3) Petitioner signed two extensions in blank; they were filled in and signed later by an IRS employee, not in petitioner's presence. Copies of the completed extensions were furnished to petitioner approximately 2 weeks after he signed them.

(4) Respondent's Los Angeles office did not afford petitioner an opportunity to enter into an installment payment agreement.

(5) On July 13, 1992, after petitioner had become a Louisiana resident, he entered into an installment payment agreement with respondent's office in Shreveport, Louisiana.

In an "Appeals Case Memorandum", which formed the basis for his subsequent determination letter to petitioner, Appeals Officer Mazaroli set forth his findings regarding petitioner's claim that the extensions he signed were invalid:

> My Finding:  My contact with the IRS Collection Division did not uncover any evidence in support of (or against) the taxpayer's allegation that the extension of the * * *  [statute of limitations on collection] is invalid.  Since the taxpayer raised the issue and the only evidence presented was a copy of the completed and signed Form 900, which matches the one sent to Appeals by California Collections, there is insufficient evidence upon which to find that the extension is invalid.  The taxpayer contends that the Form 900 was signed by him in blank and later completed by the Revenue Officer.  As evidence of this, he provided a copy of a completed Form 900 that has the Revenue Officer's signature dated after the taxpayer's signature date.  I do not find this to be sufficient evidence to overcome the correctness of the Form 900. In my experience with the IRS, I find it to be a common practice for an IRS employee to solicit an agreement from a taxpayer, and not sign the agreement form until it is reviewed by the employee and discussed with a manager.
>
> Since it is the practice of the IRS to solicit an extension or other agreement prior to review and approval and prior to IRS signature, the presumption is that the Form 900 was completed and then signed by the taxpayer and the Form 900 subsequently reviewed and signed by the Revenue Officer (The Tax Court has found that the presumption of official regularity justifies the conclusion that the Service carried out it [sic] procedures in the appropriate manner unless there is convincing evidence that shows otherwise.  Sego v. Commissioner, 114 T.C. No. 37 (June 30, 2000)). Therefore I do not find that the taxpayer's evidence is

sufficient to overcome the presumption of correctness in regard to the existing signed Form 900.

On March 5, 2002, respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330 (the notice of determination) determining that the tax assessments made against petitioner were valid and appropriate, all requirements of various applicable law and administrative procedures were followed, and issuance of the notice of levy was appropriate given the facts and circumstances presented by petitioner. In an attachment to the notice of determination ("Attachment - 3193"), respondent rejected petitioner's claim that the extensions signed by him were invalid:

Issue Raised by You

You state that you dispute the validity of the collection statute extension. It was determined by our office that there is no evidence to support your claim that the extension to extend the collection statute of limitations is invalid.

Discussion

I. Introduction

If any person liable for Federal tax liability neglects or refuses to make payment within 10 days of notice and demand, the Secretary is authorized to collect the tax by levy on that person's property. Sec. 6331(a). As a general rule, at least 30 days before taking such action, the Secretary must provide the person with a written final notice of intent to levy that

describes, among other things, the administrative appeals available to the person.  Sec. 6331(d).

Upon request, the person is entitled to an administrative review hearing before respondent's Appeals Office.  Sec. 6330(b)(1).  If dissatisfied with the Appeals Office determination, the person may seek judicial review in the Tax Court or a Federal District Court, as appropriate.  Sec. 6330(d)(1).  Generally, action on the proposed levy and the running of the section 6502 period of limitations on collection are both suspended during the pendency of the administrative review hearing and any judicial review proceeding.  Sec. 6330(e)(1).

Section 6330(c) prescribes the relevant matters that a person may raise at an Appeals Office hearing, including spousal defenses, the appropriateness of respondent's proposed collection action, and possible alternative means of collection.  A taxpayer may contest the existence or amount of the underlying tax liability at an Appeals Office hearing only if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability.  Sec. 6330(c)(2)(B).

Where, as here, the underlying tax liability is not at issue, we generally review determinations made by the Appeals Office for an abuse of discretion.  E.g., <u>Magana v. Commissioner</u>,

118 T.C. 488, 493 (2002).  In deciding whether the Appeals Office abused its discretion we must decide whether that office acted arbitrarily, capriciously, or without sound basis in fact.  See Jonson v. Commissioner, 118 T.C. 106, 125 (2002).

II.  Arguments of the Parties

Petitioner asks us to void respondent's determination sustaining the proposed levy on the ground that, for the years in issue, the section 6502 period for collection after assessment (the section 6502 period) has expired.  In support of his position, petitioner argues that the 1991 extensions are invalid.  For 1982, petitioner additionally argues that the section 6502 period with respect to the June 6, 1983, tax assessment (the 1983 assessment) had expired before October 8, 1991, the date on which the 1991 extensions were executed.  Therefore, petitioner argues that respondent's determination was "arbitrary and capricious", thereby constituting an abuse of discretion.  Respondent asks us to reject petitioner's arguments and sustain his determination.

III.  Petitioner's Relevancy Objections

As a preliminary matter, petitioner objects, on the basis of relevancy, to our receiving into evidence two of the stipulated exhibits:  Exhibit 18-J, the TXMODA transcript reflecting petitioner's account for 1982, and Exhibit 19-J, the Transaction Codes Pocket Guide, Document 11734, published by the IRS (the transaction codes guide).

Although largely duplicative of other stipulated documents, viz, the certificate of assessments and payments and the MFTRA-X transcript for 1982, the TXMODA transcript similarly reflects petitioner's post-1991 payments in discharge of a portion of his outstanding liabilities for 1982. Therefore, it is relevant to respondent's contention (discussed in Section IV) that petitioner failed to repudiate the 1991 extensions after he signed them[3] and that, in fact, he sought to benefit from them by avoiding immediate, enforced collection of those liabilities. In addition, the TXMODA transcript indicates that petitioner extended the section 6502 period with respect to his 1982 assessed liabilities beyond October 8, 1991, on three separate occasions beginning in 1988. Therefore, it is also relevant to and supportive of respondent's argument that the section 6502 period with respect to the 1983 assessment had not expired when petitioner signed the 1991 extension covering 1982 on October 8, 1991.

The transaction codes guide identifies the numerical codes keyed to the entries on the TXMODA transcript. Therefore, it is an aid to understanding that transcript.

---

[3] The payments reflected in the transcripts (and, in particular, payments made after expiration of the statutory period of limitations on collection provided for in sec. 6502(a)(1) applicable to the years in issue) are evidence of petitioner's continuing belief that the assessed liabilities remained subject to collection because of the 1991 extensions.

For the foregoing reasons, we find that both Exhibits 18-J and 19-J are relevant to the issues raised herein.  Therefore, we overrule petitioner's objections to our receiving into evidence those exhibits.

IV.  Validity of the Extensions

A.  Alleged Procedural Irregularities

The parties have stipulated the admission into evidence of the 1991 extensions, which, together, purport to extend the limitations period on collection, for 1982, until December 31, 2005, and, for 1987 and 1988, until December 31, 2004.  Both extensions were signed by petitioner on October 8, 1991, and by Revenue Officer Michael J. Quinn, on October 15, 1991.  Appeals Officer Mazaroli concluded that, in accordance with customary IRS practice, the 1991 extensions were completed by the revenue officer, submitted to petitioner for his signature, and, after review by the revenue officer and "a manager", signed and dated by the revenue officer.  Petitioner disputes that finding and states that he was required to, and did, sign the 1991 extensions in blank (without knowledge of the extension dates) as a condition precedent to the IRS agreeing to enter into an installment payment agreement with petitioner.  Petitioner's stipulated testimony is that he received filled-in, executed copies of the 1991 extensions approximately 2 weeks after he signed them; i.e., on approximately October 22, 1991.

Because the 1991 extensions, on their face, do not indicate whether the extension particulars (i.e., taxable years, assessment dates, outstanding liabilities, and extension expiration dates) were filled in before or after petitioner signed them, Appeals Officer Mazaroli's finding that petitioner signed completed, not blank, extensions was based upon the presumption of official regularity. That presumption "supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926); see also R.H. Stearns Co. v. United States, 291 U.S. 54, 63 (1934) ("Acts done by a public officer 'which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.'"). We have repeatedly applied the presumption to sustain official acts by the Commissioner of Internal Revenue. See, e.g., Sego v. Commissioner, 114 T.C. 604, 611 (2000); Perlmutter v. Commissioner, 44 T.C. 382, 398 (1965), affd. 373 F.2d 45 (10th Cir. 1967); Lillis v. Commissioner, T.C. Memo. 1983-142, affd. 740 F.2d 974 (9th Cir. 1984). In this case, petitioner relies solely upon his stipulated testimony that, approximately 2 weeks after he signed the 1991 extensions, he received his copies from the IRS, which "had been completed with the statutory period for collection extended to December 31, 2004

for his 1987 and 1988 tax years and to December 31, 2005 for his 1982 tax year." Petitioner made the same claim (that the 1991 extensions were signed by him in blank and later completed by an IRS employee) to Appeals Officer Mazaroli.

Petitioner's actions, of which there is evidence, belie his testimony. He received filled-in, executed copies of the 1991 extensions approximately 2 weeks after he signed them; i.e., on approximately October 22, 1991. The consequence of the extensions, to extend the period of limitation for collection, is plain on the face of the extensions; yet, apparently, petitioner did not contact the IRS to repudiate the extensions or to complain about any irregularity in their execution. Between October 8, 1991, when the extensions were signed by petitioner, and July 3, 2001, when respondent issued the notice of levy (almost 10 years), petitioner entered into and made numerous payments pursuant to an installment agreement with respondent, which effectively forestalled enforced collection against him (an obvious benefit) until he ceased making payments pursuant to that agreement. Those actions indicate that petitioner's claim of invalidity is motivated by a desire to avoid any additional collection, by levy, of his remaining liabilities to respondent rather than by a bona fide belief in the invalidity of the extensions. Under those circumstances, the evidence before Appeals Officer Mazaroli falls far short of the "clear evidence"

necessary to negate the presumption of official regularity upon which he relied.

Petitioner's actions after he signed the 1991 extensions also amount to a ratification of the extensions, even assuming they were blank when he signed them and, therefore, improperly obtained. See United States v. Vassallo, Inc., 274 F.2d 791, 794 (3d Cir. 1960); Crown Willamette Paper Co. v. McLaughlin, 81 F.2d 365, 368 (9th Cir. 1936). Moreover, respondent's willingness to forgo enforced collection, enter into an installment agreement, and accept small monthly payments over a 10-year period demonstrates respondent's reliance on the validity of the extensions. "A waiver proper on its face, relied on by the Commissioner, cannot be later repudiated by the taxpayer." Cary v. Commissioner, 48 T.C. 754, 763 (1967).

We sustain Appeals Officer Mazaroli's finding that the 1991 extensions were valid and were not improperly obtained.

B. Whether the 1991 Extension Covering 1982 Is Effective To Permit Collection of Accrued Interest Relating to the 1983 Assessment

Petitioner alleges that the 1991 extension covering 1982, even if validly obtained, was not effective to extend the section 6502 period for collection of interest[4] attributable to the 1983

---

[4] Because petitioner's account for 1982 shows a zero balance of tax owed, petitioner's argument necessarily concerns the accrued interest attributable to the 1983 assessment. See sec. 6601(g), allowing interest on any tax to be assessed and

(continued...)

assessment, which he alleges had already expired on June 6, 1989, 6 years after the date of the assessment.

Petitioner's argument is based upon the fact that, until it was amended in 1990, section 6502(a)(1) provided a 6-year statute of limitations on collection. In that year, Congress amended section 6502(a)(1) to extend the period of limitations for the collection of taxes after assessment to 10 years. Omnibus Budget Reconciliation Act of 1990 (OBRA), Pub. L. 101-508, sec. 11317(a), 104 Stat. 1388-458. The 10-year limitations period applies to taxes assessed after November 5, 1990, and to taxes assessed on or before that date if the 6-year limitations period under prior law had not expired as of that date. Id. subsec. (c). Petitioner argues that, because the 6-year limitations period applicable to the 1983 assessment under prior law expired prior to November 5, 1990, that period is not extended to 10 years by the 1990 amendment.[5]

Respondent does not dispute petitioner's analysis of the law, but argues that, because petitioner had timely executed

---

[4](...continued)
collected at any time during the period within which the underlying tax may be collected.

[5] Petitioner apparently agrees that, because the 6-year limitations period applicable to the $2,321 tax assessment for 1982 on Aug. 12, 1985, did not expire until after Nov. 5, 1990, the 10-year limitations period applies to the collection of interest attributable to that assessment, and a valid extension executed on Oct. 8, 1991, with respect to the collection of that interest is timely.

three prior extensions of the section 6502 period for 1982 (sometimes, the earlier extensions), each of which extended that limitations period beyond October 8, 1991, the 1991 extension covering 1982 was, in fact, timely. In making that argument, respondent points to the TXMODA transcript for 1982, which, he claims, reflects the existence of the earlier extensions.

The TXMODA transcript lists three dates (May 26, 1988, March 19, 1990, and May 11, 1990) to the right of code number 550R. To the right of and one line below each of those dates is the notation "COLL - EXT - DT" (presumably standing for collection extension date) immediately followed by a later date (December 31, 1993, opposite May 26, 1988; December 31, 1992, opposite March 19, 1990; and December 31, 1994, opposite May 11, 1990). The TXMODA transcript also reflects the 1991 extension covering 1982 by means of the same type of entry except that it refers to code number 550, not 550R. Appeals Officer Mazaroli's case memorandum shows that he reviewed a TXMODA transcript during his consideration of the case.

Petitioner argues that the entries contained in the TXMODA transcript do not constitute evidence that he agreed to the earlier extensions, and he concludes: "It was arbitrary and capricious for the IRS to issue a Notice of Determination with respect to the June 6, 1983, assessment". Petitioner supports his position, on brief, as follows:

It should be noted that * * * [the earlier extensions] on * * * [the TXMODA transcript] do not appear on * * * [the MFTRA-X transcript for 1982]. The latter * * * contains the October 8, 1991, extension of the statute, and identifies such as a code "550" transaction; whereas, the alleged extensions on * * * [the TXMODA transcript] are listed as codes [sic] "550R" transactions. Whereas * * * [the transaction codes guide] identifies transaction code "550" as "Collection Status Extension", it does not contain a "550R" transaction code.

We find that the TXMODA transcript entries indicating petitioner's execution of the earlier extensions constitute evidence of their existence, notwithstanding petitioner's argument to the contrary. We have repeatedly approved respondent's reliance on TXMODA transcripts as verification of the information and actions reflected therein. See, e.g., Tornichio v. Commissioner, T.C. Memo. 2002-291; Schroeder v. Commissioner, T.C. Memo. 2002-190. Moreover, section 6330(c)(1) "does not require the Commissioner to rely on a particular document to satisfy the verification requirement imposed by that section." Roberts v. Commissioner, 118 T.C. 365, 371 n.10 (2002). The reference to transaction code "550R" rather than "550", although unexplained, is of little consequence in light of the specific reference in each instance to a collection extension date ("COLL-EXT-DT") and the entry of a specific date immediately thereafter; and although there is no explanation for the omission of any reference to the earlier extensions in the MFTRA-X transcript for 1982, we draw no negative inference from that

omission given petitioner's failure to show that such information is customary in a MFTRA-X transcript as compared to a TXMODA transcript.  Therefore, we find that Appeals Officer Mazaroli's determination that the 1991 extension covering 1982 was timely executed with respect to the 1983 assessment is supported by a preponderance of the evidence.[6]

---

[6]  We note, in passing, that the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3461, 112 Stat. 764 enacted a new sec. 6502(a)(2) to provide that extensions of the 10-year statute of limitations on collection may only be made in connection with the simultaneous execution of an installment agreement.  That rule is effective for extension requests made after Dec. 31, 1999.  RRA 1998 sec. 3461(c)(1).  RRA 1998 sec. 3461(c)(2) provides that pre-2000 extensions (not made in conformity with the new requirement) shall expire on the latest of (1) the last day of the 10-year collection period provided in sec. 6502(a)(1), (2) Dec. 31, 2002, or (3) in the case of an extension executed in connection with an installment agreement, the 90th day after the expiration of such extension.  Assuming arguendo that the 1991 extensions are not covered by the last of the three alternative expiration dates for pre-2000 extensions (because they were executed too long, more than 9 months, before the July 13, 1992, installment agreement), and even though the statutory 10-year limitations period on collection with respect to all of the assessments for the years in issue has expired and we are beyond Dec. 31, 2002, the transition rule for pre-2000 extensions does not prevent collection herein.  That is because respondent commenced collection by issuing the notice of levy on July 3, 2001, well before the Dec. 31, 2002, alternative expiration date for pre-2000 extensions.  Petitioner's filing of a request for a Collection Due Process hearing on July 10, 2001, suspended the running of the period that otherwise would have ended on Dec. 31, 2002, pursuant to sec. 6330(e)(1), which provides, in relevant part, that "the running of any period of limitations under section 6502 * * * shall be suspended for the period during which * * * [the] hearing, and appeals therein, are pending."  That suspension is still in effect.

V. <u>Conclusion</u>

Appeals Officer Mazaroli's determination affirming the proposed levy action against petitioner was not an abuse of discretion.  That determination is hereby sustained.

<u>Decision will be entered</u>

<u>for respondent</u>.